DEL ROSARIO ET AL., DEMANDANTES, APELANTES Y APELADOS, *v.*
RUCABADO ET AL., DEMANDADOS, APELADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Guayama en
causa sobre reivindicación.

No. 1177.—Resuelto en reconsideración en enero 28, 1916.

EN ESTE caso los Juecos Sres. Presidente Hernández y Aso-
ciado Aldrey votaron por la *revocación* de la sentencia en
la parte apelada por los demandados, mientras que los
Jueces Sres. Wolf y del Toro votaron por la *confirma-
ción,* de dicha parte de la sentencia, y habiendo empate
en esta votación por no haber intervenido el Juez Aso-
ciado Sr. Hutchison, que fué el juez sentenciador, *queda
firme* la sentencia en la parte apelada por los deman-
dados.

SUMARIO DE LA OPINIÓN EMITIDA POR EL JUEZ ASOCIADO SR. DEL
TORO.

JURISPRUDENCIA—CONFLICTO ENTRE SENTENCIAS DE LA CORTE SUPREMA DE LOS
ESTADOS UNIDOS Y LA DE PUERTO RICO.—Cuando existe conflicto entre una
sentencia de la Corte Suprema de Puerto Rico y otra de la Corte Suprema
de los Estados Unidos, la jurisprudencia establecida por la última debe pre-
valecer.

BIENES DE MENORES—PAGO DE DEUDA—ENTREGA DE BIENES.—De acuerdo con la
ley vigente en Puerto Rico en 1892, una viuda y un tutor *ad litem* no tenían
autoridad para entregar los bienes de un menor en pago de una deuda de su
difunto padre por medio de venta privada, y no existía facultad en juez alguno
para aprobar una partición voluntaria como la de que se trataba en este caso.
*Longpré* v. *Díaz,* 237, U. S., 512.

ID.—ENTREGA DE BIENES—NULIDAD—REIVINDICACIÓN—RESCISIÓN DE PARTICIÓN.—
En Puerto Rico, la entrega de bienes de un menor por medio de venta privada
no autorizada por la ley local, aun cuando fuere aprobada por un juez, es
nula, y el menor, al llegar a su mayor edad, tiene derecho a entablar una
acción de reivindicación bajo las disposiciones del Código Civil de Puerto Rico
que regían entonces y que eran aplicables a este caso, sin antes solicitar la
rescisión de la partición. *Longpré* v. *Díaz,* 237 U. S. 512.

PARTICIÓN DE HERENCIA—ADJUDICACIONES A ACREEDORES EN PAGO DE DEUDAS—
MENORES DE EDAD—AUTORIZACIÓN JUDICIAL.—Son totalmente nulas las adju-
dicaciones en pago de deudas hechas directamente a los acreedores en la par-
tición de una herencia en que existen menores de edad, sin haberse obtenido
previamente la autorización judicial que para la venta de bienes de menores
exigen las leyes.

Apelación—Jurisdicción—Sentencia.—Cuando sólo se apela de parte de una sentencia, el Tribunal Supremo no tiene jurisdicción para considerar y resolver los pronunciamientos relativos a la parte de la misma no apelada.

Reivindicación—Acción Reivindicatoria—Nulidad de Adjudicaciones—Cuestión a Decidir.—No obstante haberse ejercitado en este caso la acción reivindicatoria, la demanda contiene otras súplicas, entre ellas las de que se declaren nulas ciertas adjudicaciones, y se ordene la cancelación producida por las mismas en el registro de la propiedad. Dichas nulidades y cancelaciones, según la teoría adoptada finalmente por el juez sentenciador, llegaron a ser las únicas cuestiones resueltas en definitiva en el pleito. *Se resolvió:* Que siendo las adjudicaciones de que se trata totalmente nulas según la jurisprudencia establecida en la misma opinión, y atendidas todas las circunstancias concurrentes, las cuestiones suscitadas pueden considerarse y resolverse en este pleito, no obstante haberse declarado sin lugar la acción de reivindicación.

SUMARIO DE LA OPINIÓN EMITIDA POR EL JUEZ ASOCIADO

SR. ALDREY.

Reivindicación—Acción Reivindicatoria—Restitución de Bienes—Frutos y Rentas — Apelación — Reclamación Accesoria.—Cuando un demandante, ejercitando la acción reivindicatoria de una tercera parte de una finca, pide que se le restituya en la posesión y dominio de la misma, y que se le concedan los frutos y rentas producidos y dejados de percibir, si la sentencia niega la restitución, y no apela de esa parte de ella, no solamente carece de derecho para obtener dichos frutos y rentas por ser esa reclamación accesoria de la reivindicatoria denegada, sino que la Corte Suprema carece de jurisdicción para considerar la cuestión sobre restitución, por falta de apelación, por lo que en este caso concreto a ningún fin práctico conduce la consideración del caso de *Longpré* v. *Díaz*, 237 U. S. 512.

Id.—Nulidad de Títulos—Título del Demandado.—Antes de que pueda decidirse sobre la nulidad del título de una persona de quien se trata de reivindicar determinada propiedad, es preciso que se pruebe el título de la persona que pretende la reivindicación.

Id.—Alegaciones sobre la Nulidad del Título del Demandado—Defensa.—Aun cuando además de las alegaciones para la acción reivindicatoria contenga la demanda otras para demostrar que el título del demandado es nulo y se solicite que así se declare, si el título con que reclama el demandante no tiene que surgir de la declaración de nulidad del título del demandado, tales alegaciones sobre nulidad deben considerarse únicamente como un anticipo de defensa y no deben resolverse cuando no prospera la acción a la cual se opone.

Id.—Nulidad—Efecto de la Acción Principal de Reivindicación—Pronunciamiento en Cuanto a Aquella.—Cuando las nulidades que se piden en una demanda no son causa sino efecto de la acción principal de reivindicación que se ejercita, si ésta es improcedente, huelga hacer pronunciamiento sobre aquéllas.

Los hechos están expresados en las opiniones.

Abogados de los demandantes-apelantes: *Sres. Adolfo Dones y Damián Monserrat, Jr.*

Abogados de los demandados y apelantes: *Sres. Muñoz &
Brown.*

Opinión emitida por el Juez Asociado. Sr. del Toro, con la
Cual está conforme el Juez Asociado Sr. Wolf.

Este es un caso en el cual está envuelta la adjudicación de
bienes de menores en pago de deudas contraídas por su cau-
sante.   Esta Corte Suprema, lo consideró y decidió en mayo
24 de 1915 declarando con lugar el recurso interpuesto por
los demandados Mateo Rucabado y Manuel Otero, y sin lugar
el establecido por los demandantes, y revocando, en su con-
secuencia, la sentencia apelada.   Luego los demandantes, el
29 de junio de 1915, pidieron la reconsideración de nuestro
fallo, fundándose principalmente en que la Corte Suprema
de los Estados Unidos, en el caso de *Longpré* v. *Díaz,* 237
U. S. 512, había establecido una doctrina contraria a la sen-
tada por nosotros al resolver la cuestión esencial envuelta en
nuestra decisión.   Y esta corte, por resolución de 7 de julio
de 1915, acordó la reconsideración solicitada y ordenó la cele-
bración de una nueva vista que se fijó para el 16 de noviembre
de 1915, en cuya fecha comparecieron los abogados de ambas
partes e informaron oralmente, habiendo archivado además
alegatos escritos en apoyo de sus respectivas pretensiones.

Los demandados Rucabado y Otero sostuvieron en su ale-
gato y en el acto de la vista, como cuestión previa, que esta
corte no debió haber reconsiderado su sentencia, (*a*) por no
haberse presentado la moción ni en tiempo ni en forma;
(*b*) porque la moción debió discutirse previa y separada-
mente antes de ordenarse la nueva vista del caso, y (*c*) por-
que aun suponiendo que se hubiera presentado en tiempo y
forma, la moción no contenía fundamentos suficientes para
conceder la reconsideración solicitada.   Los demandados ci-
taron muchas autoridades en apoyo de las anteriores alega-
ciones.   Tal vez tengan razón.   Quizás, basándose en cues-
tiones técnicas, esta corte pudo negarse a reconsiderar su
decisión de 24 de mayo último.   Pero es lo cierto que esta

corte creyó que no debía perderse tiempo alguno en fijar la jurisprudencia que debía prevalecer en una cuestión de derecho tan importante, y en bien de la comunidad y teniendo aún poder sobre su fallo, lo reconsideró, abriendo de nuevo los recursos a las alegaciones de las partes.

Expuesto lo que antecede veamos lo que resulta de los autos. De un examen cuidadoso de las alegaciones y de las pruebas aparece que el 25 de octubre de 1902 falleció en el pueblo de Cayey, P. R., Luz María del Rosario, sin otorgar testamento. El 25 de octubre de 1903, la corte competente declaró como herederos suyos, a sus legítimos hijos María Dolores, Ramón Miguel, Josefa Antonia, Luz Salomón, Francisco Rafael y Julio César, y a su viuda Juana Bayonet. Luego en 9 de diciembre de 1903, se resolvió por sentencia judicial que Eduardo y Juan Pablo Rosario Meléndez, Sandalio Rosario Torres y Marcelina y Luz Rosario Rivera, eran hijos naturales reconocidos del dicho Luz María del Rosario, y Alejandrina Manzano Rosario, nieta natural reconocida del mismo, quedando así formada la sucesión de Luz María del Rosario por seis hijos legítimos, la viuda, cinco hijos naturales reconocidos y una nieta natural reconocida.

Conocidos los herederos, se procedió por los abogados Antonio Sarmiento y Luis Muñoz Morales, contadores-partidores nombrados al efecto, a llevar a cabo las operaciones de inventario, avalúo, liquidación y división de los bienes dejados por el causante. Los demandantes, que eran entonces todos menores de edad, fueron representados en las operaciones por su defensor Juana Campos, nombrado para tal acto por la corte. Se reconocieron ciertas deudas existentes a favor de los demandados Mateo Rucabado, Robustiano Meléndez, Manuel Otero Valera y José Ramírez Muñoz, y para satisfacerlas se acordó adjudicar y se adjudicó a dichos acreedores en pago de sus créditos determinadas fincas rústicas. Las operaciones fueron aprobadas por la Corte de Distrito de Humacao y se protocolizaron en la notaría de Cayey el 4 de junio de 1904. Los acreedores entraron en el disfrute

de las propiedades adquiridas e inscribieron sus títulos en el registro de la propiedad correspondiente.

Así las cosas, los hijos legítimos del repetido Luz María del Rosario, iniciaron el presente pleito solicitando: 1°., que se declaren nulas en una tercera parte las adjudicaciones a que nos hemos referido; 2°., que se cancelen, también en cuanto a una tercera parte, las inscripciones de dichas adjudicaciones en el registro de la propiedad; 3°., que los demandados Meléndez, Rucabado, Otero y Ramírez paguen a los demandantes ciertas sumas de dinero por el importe de los frutos y rentas producidos y dejados de percibir por los demandantes durante el tiempo en que éstos han sido privados de sus condominios; 4°. que se restituya a los demandantes en la posesión y dominio de una tercera parte de todas y cada una de las fincas adjudicadas, y 5°., que los demandados paguen las costas y honorarios de abogado.

Los demandados Rucabado y Otero excepcionaron y contestaron la demanda por medio de sus abogados Muñoz y Brown; el demandado Ramírez excepcionó y contestó la demanda por medio de su abogado Antonio Sarmiento, y la demandada Alejandrina Manzano contestó la demanda por medio de sus abogados Palacios y Tous Soto, limitándose a aceptar como ciertos los hechos alegados por los demandantes "pero entendiéndose que las fincas que se reivindican deberán ser restituídas, así como sus frutos y rentas, a todos los herederos de Don Luz María del Rosario para ser distribuídas entre ellos en la forma legal correspondiente." Con respecto a los otros demandados no consta que hicieran alegación alguna, ni siquiera aparece que fueran emplazados. En el acto del juicio, a petición de los demandantes, fueron eliminados de la demanda los demandados Ramírez y Meléndez.

Practicadas las pruebas ofrecidas por las partes que concurrieron al juicio, que fueron al parecer únicamente los demandantes y los demandados Rucabado y Otero, se dictó sentencia declarando con lugar la demanda en cuanto a las peticiones primera y segunda, y sin lugar en cuanto a las

peticiones tercera y cuarta, todo sin especial disposición en cuanto a las costas "y sin perjuicio de cualquier derecho que pudieran tener los demandados a los frutos y rentas alegados y no probados una vez establecido tal derecho y demostrada la cuantía de dichos frutos y productos en cualquiera otra acción adecuada, o de cualquier otro derecho que pudieran tener ellos o cualquiera de las partes y que no ha sido expresa y definitivamente resuelto por esta sentencia." De suerte que la sentencia de la corte de distrito se limitó a declarar nulas en una tercera parte las adjudicaciones hechas a favor de los demandados Rucabado y Otero de las fincas descritas en la demanda, llevadas a cabo en las operaciones divisorias de la herencia de Luz María del Rosario Torres, y a ordenar la cancelación de las inscripciones causadas por dichas adjudicaciones en el registro de la propiedad, también en cuanto a una tercera parte.

Los demandantes apelaron de aquella parte de la sentencia referente a la no concesión de las rentas y productos de las fincas en cuestión, y de aquella otra que resolvía la cuestión de costas y honorarios de abogado. Los demandados Rucabado y Otero manifestaron su no conformidad con la sentencia dictada y apelaron de ella para ante este tribunal.

Expuestos los anteriores hechos este Tribunal Supremo entró, en su decisión de mayo 24 de 1915, a examinar la apelación interpuesta por los demandados Rucabado y Otero, y se expresó así:

"* * * Prescindiendo de las objeciones que pudieran tal vez suscitarse con respecto a si los demandantes tienen derecho a entablar éste pleito en la forma en que lo hicieron, procederemos a estudiar y a resolver en su fondo la alegación fundamental en que descansa la demanda de los legítimos hijos de Luz María del Rosario, a saber: que las adjudicaciones en pago de deudas hechas a los demandados Rucabado y Otero son nulas porque entrañan actos constitutivos de verdaderas enajenaciones y no se obtuvo antes la autorización de la corte competente para llevarlas a efecto.

"No hay duda alguna con respecto a la calificación que debe darse a una adjudicación de una finca en pago de deudas. Dicha adjudi-

cación envuelve claramente la enajenación de un bien inmueble. Tampoco hay duda alguna con respecto al hecho de que en la fecha en que tuvieron lugar las adjudicaciones de que se trata en este caso, lo mismo que hoy, la ley exigía la previa autorización judicial para la venta de bienes inmuebles pertenecientes a menores.

"Ahora bien. · ¿Se trata en este caso de una enajenación pura y simple de bienes inmuebles pertenecientes a menores? Veámoslo.

"El legislador ha dictado reglas amplias y precisas con respecto a lo que debe hacerse cuando muere una persona dejando bienes. Entre esas reglas existe una que dice: "Los acreedores reconocidos como tales podrán oponerse a que se lleve a efecto la partición de la herencia hasta que se les pague o afiance el importe de sus créditos.' Artículo 1049 del Código Civil Revisado y 1082 del antiguo. Comentando Manresa dicha regla se expresa como sigue:

" 'Los herederos tienen desde luego la facultad de partir o dividir la herencia; pero sólo deben comprenderse en la división los bienes y derechos que queden después de cumplidas las obligaciones o pagadas las deudas de la sucesión; lo contrario sólo conduce a hacer figurar como herencia lo que realmente no lo es, y a mezclar en la división valores que no pertenecen a los herederos.' 7 Manresa, Código Civil Español, 756.

"En el presente caso murió una persona, Luz María del Rosario, dejando bienes y sin otorgar testamento. Se procedió al nombramiento de contadores partidores y éstos inventariaron, valuaron, liquidaron y partieron el caudal hereditario. Existían deudas y se convino con los acreedores en pagarlas adjudicándoles al efecto ciertas fincas. Había herederos menores de edad y se les nombró un defensor que los representara, sometiéndose luego las operaciones practicadas a la aprobación de la corte.

"Los herederos, entre ellos los menores representados por su defensor, estuvieron conformes. Si se hubiera tratado de herederos todos mayores de edad, su conformidad hubiera sido suficiente, pero existían menores y se acudió a la corte de justicia competente a fin de que impartiera, como impartió, su aprobación.

"Es cierto que los menores hijos tuvieron desde el momento de la muerte de su padre una participación en todos los bienes dejados por el mismo, pero también lo es que de acuerdo con la ley se procedió a liquidar la herencia y a pagar las deudas, siendo únicamente el remanente que quedara lo que en verdad correspondía a los herederos mayores o menores de edad. La herencia, dijo el Rey Sabio en la Ley 8ª., es 'la heredad, e los bienes e los derechos de algund finado, sacando ende las debdas que devía e las cosas que y fallaren agenas.'

"Por eso la Dirección General de los Registros resolvió en 9 de febrero de 1887 que los bienes que se adjudican en pago de deudas, pasan directamente del causante a los acreedores. Por eso debe contestarse en la negativa la pregunta que formulamos al principio. Una adjudicación de bienes inmuebles en pago de deudas hecha al liquidarse y partirse una herencia, en la que existen herederos menores de edad, no debe calificarse como un acto aislado de enajenación, a los efectos de las prescripciones del Código Civil sobre autorización judicial para enajenar bienes a menores, sino como un acto de partición que debe regularse por las que gobiernan la materia.

"Son dos casos distintos y para ambos fijó el legislador ciertos trámites tendentes a asegurar el derecho del menor. Cuando el menor es dueño en absoluto de un bien inmueble, entonces para poderlo enajenar es necesario que se obtenga la previa autorización judicial, que debe concederse sólo cuando se demuestra la utilidad o la necesidad de la enajenación. Pero cuando el menor tiene sólo un derecho hereditario, sujeto a liquidación, no es necesario acudir a la autoridad judicial para demostrar previamente la necesidad o la utilidad del pago de las deudas, ya que la necesidad de dicho pago es manifiesta.

"En ambos casos interviene el poder judicial. En el primero, como es natural, previamente, porque el caso surge durante la administración de los bienes del menor y se debe a causas varias que requieren un estudio especial antes de que pueda decidirse si la transacción que se propone es o nó beneficiosa o necesaria para los intereses del menor. En el segundo, la intervención judicial viene lógicamente al fin, porque la necesidad del pago de las deudas del causante ha sido ya fijada previamente por el legislador, y lo que la ley requiere para mayor garantía del menor es que la corte examine y apruebe o no, según el caso, las operaciones particionales en que intervenga, antes de que puedan surtir todos sus efectos.

"Citan en su alegato los demandantes varias resoluciones de la Dirección General de los Registros en apoyo de la teoría que sustentan. Dicho centro resolvió primero, el 9 de febrero de 1887, que cuando se adjudicaban a un heredero determinados bienes para el pago de deudas, aun cuando existieran herederos menores de edad, no era necesario solicitar la previa autorización judicial para la enajenación del derecho que los menores tuvieren en los bienes adjudicados, y luego, en las varias resoluciones que citan los demandantes, distinguió el caso indicado de aquel en que se adjudican directamente los bienes al acreedor en pago de su crédito. Hemos meditado mucho con respecto al fundamento que pudo tener la Dirección para diferenciar ambos casos y no hemos encontrado ninguno que nos parezca

razonable.  Para nosotros la naturaleza de las transacciones en los dos casos es la misma, constituyendo ambos actos de partición y no enajenaciones especiales de bienes inmuebles pertenecientes a menores.

"Siendo ese nuestro criterio, cae por su base la demanda establecida.  La partición se llevó a efecto de acuerdo con la ley y no puede por tanto decretarse su nulidad en cuanto a las adjudicaciones de bienes para el pago de las deudas de la herencia.

"Debe, por consiguiente, declararse con lugar el recurso interpuesto por los demandados Rucabado y Otero, sin que haya necesidad de discutir siquiera el entablado por los demandantes que debe declararse sin lugar."

Así las cosas, el Tribunal Supremo de los Estados Unidos, en junio 1 de 1915, resolvió el caso de *Longpré* v. *Díaz, supra.* A continuación transcribimos los hechos tales como aparecen en la opinión de la corte emitida por el Juez Presidente White y la consideración y resolución de la cuestión de derecho que afecta a este caso que estamos considerando y resolviendo:

"Clemente Díaz y González, vecino de Vieques, Puerto Rico, murió allí en abril de 1890, dejando una viuda y un hijo pequeño, fruto de su matrimonio.  El difunto era dueño, según el registro, de una parcela de terreno dedicada a la agricultura y denominada 'Destino,' así como de otras parcelas pequeñas y de poco valor, siendo todas ellas bienes privativos adquiridos antes de su matrimonio.  De acuerdo con las disposiciones del código se reconoce al menor como único heredero legal de su padre, habiendo adquirido el primero todos los bienes del segundo sujetos sin embargo al usufructo de una tercera parte a favor de su madre, la viuda.  En abril de 1892 y en un juicio de conciliación ante un juez municipal, preparatorio al pleito que entablaría Ramón Aboy Benítez sobre cobro de una deuda contra la sucesión, la viuda admitió que Aboy era acreedor de la sucesión en la suma de 3,000 pesos y pico, deuda que fué probada en su mayor parte por los pagarés firmados por el difunto, siendo el resto el importe de cuentas de médico y de contribuciones, así como por dinero adelantado para el sostenimiento de la viuda e hijo.  El acreedor, al parecer de conformidad con ese reconocimiento de deuda, convino en aguardar para su pago hasta marzo de 1893 en que expiraba un arrendamiento existente sobre la finca 'Destino' a favor de la sociedad agrícola Mourraille & Martineau.  En agosto de 1892 y a petición de la viuda, el Juzgado de Primera Instancia de Humacao, dentro de cuya jurisdicción se encontraba Vieques, reconoció al menor como

único heredero de su padre y como tal con derecho a la herencia, sujeta ésta al usufructo de la viuda como antes hemos dicho. La corte a petición de la viuda, más tarde nombró a un tío del menor por línea paterna, Santos Díaz y González, tutor *ad litem* de aquél, para que procediera en lugar del menor y lo representara en todos aquellos asuntos en que por conflicto de intereses o por cualquier otra causa, su madre estuviera incapacitada para hacerlo. Algún tiempo después Aboy, por medio de escritura, traspasó a la firma de Mourraille & Martineau la mayor parte de la deuda reconocida, interviniendo la viuda en la escritura con el objeto de tomar conocimiento del traspaso y además para reconocer algunas deudas pequeñas que la sociedad tenía contra la sucesión.

"Con el propósito de hacer una partición extrajudicial, la viuda y el tutor *ad litem* conjuntamente nombraron un contador con tal objeto, quien preparó un convenio para la llamada partición, el cual fué otorgado por las partes en diciembre 27 de 1893. En ese convenio se consignó el pasivo de la herencia, así como el activo, que fué valorado, disponiéndose de todos los bienes que constituían la herencia. Para los efectos del caso baste decir que como la deuda a favor de la sociedad Mourraille & Martineau alcanzaba exactamente a una suma igual al valor que se había dado a la finca 'Destino,' ésta fué traspasada y entregada a dicha sociedad en pago de su deuda, siguiéndose idéntico procedimiento y traspasándose otra propiedad a Aboy en pago de su deuda relativamente pequeña. El escaso remanente de los bienes hereditarios fué adjudicado al menor, sujeto al usufructo de la tercera parte a favor de su madre. Para convertir ese convenio privado de partición voluntaria y extrajudicial en un documento público inscribible, la viuda, el día 1 de febrero de 1894 compareció ante un notario, y, exhibiendo el contrato, lo depositó en los archivos de la oficina de aquél después de hacer las manifestaciones al efecto. Ya hecho esto, una copia del contrato tal como había sido autenticado y archivado fué presentada al juez de Primera Instancia de Humacao para su aprobación, que fué impartida con instrucciones al registrador de inscribir el contrato en el registro tal como había sido autenticado. En abril de 1894 ésta se llevó a cabo, y de ese modo el título sobre la finca 'Destino' que aparecía en el registro a nombre del difunto Díaz, pasó a la sociedad Mourraille & Martineau. Se ha admitido, sin embargo, que en el entretanto, o sea en febrero de 1894, y en virtud del traspaso efectuado por medio del llamado convenio de partición, se hizo entrega de la posesión de la finca 'Destino' a la sociedad, la cual la poseyó afirmando así el derecho de propiedad sobre la misma.

"Por escritura notarial otorgada en mayo de 1894 e inscrita en el registro, y con el objeto de repartir el activo de la sociedad Mourraille & Martineau entre los socios, el título de la finca "Destino" fué traspasado por la sociedad a Víctor Mourraille. Al fallecimiento de éste que, aunque su fecha no aparece muy claramente del récord ocurrió probablemente en enero de 1895, la propiedad pasó a los demandantes en error, su viuda y herederos. No aparece si adquirieron por herencia intestada o testada, pero esto es inmaterial pues se ha admitido que los derechos de que ellos disfrutaban eran sólo una continuación de aquellos que el propio Mourraille tenía en virtud del traspaso de la finca 'Destino' a la sociedad y de la adjudicación de la misma a Mourraille en la división del activo de la sociedad.

"Más de veinte años después del fallecimiento de su padre, el menor Clemente Díaz, habiendo sido emancipado, entabló en una corte local de Puerto Rico este pleito contra los actuales demandantes en error, la viuda y herederos de Mourraille, para reivindicar la finca 'Destino' adquirida por ellos con anterioridad en las circunstancias antes mencionadas. Los demandados hicieron trasladar el caso a la corte inferior y rebatieron con éxito una moción de devolución del caso a la corte primitiva. Entonces la demanda fué enmendada en el sentido de que el demandante era el dueño de la propiedad debidamente inscrita a su favor, y que su posesión había sido erróneamente interrumpida en 1894 por la acción de los demandados o de su causante al posesionarse de ella. Se hizo una breve exposición de los hechos que hemos enumerado anteriormente, con súplica de recobrar la finca 'Destino' con sus frutos y rentas desde la adquisición en 1894. Fué presentada una contestación que fué excepcionada por insuficiente. Parece ser que antes de resolverse la excepción, se presentó una contestación enmendada y más completa. En esta contestación los hechos que hemos expresado anteriormente fueron sustancialmente admitidos. La facultad del demandante para demandar fué negada: primero, porque como heredero de su padre no tenía derecho a hacerlo; y segundo, porque no tenía derecho a recobrar la propiedad sin antes presentar una acción con el fin de rescindir las operaciones particionales y el derecho inscrito resultante de las mismas, impugnando en su consecuencia dichas operaciones. La falta de un derecho a recobrar, como cuestión de méritos, fué controvertida; primero, por el alegado término de prescripción; segundo, por la validez de las operaciones particionales y el efecto concluyente de la sentencia aprobando las mismas, dictada por corte competente; tercero, porque una acción para rescindir tales procedimientos estaba impedida por la prescripción alegada; cuarto, porque en todo caso el demandante no

tenía derecho de acción para recobrar los frutos y rentas de la finca pues durante su menor edad eran cobrables, si estaban vencidos, por su madre como administradora de su herencia, y puesto que, aun cuando existiera la acción para recobrar, los frutos y rentas no podían ser exigidos a Mourraille que había procedido de buena fe, ni a los demandados, sus causahabientes, que también habían procedido de buena fe. Esta contestación también fué excepcionada por no ser materia de defensa. La corte declaró con lugar la excepción en cuanto impugnaba la suficiencia de las defensas técnicas de la contestación basadas en que las llamadas operaciones particionales eran nulas y en que la aprobación del juez de Primera Instancia de Humacao era también nula por no tener éste jurisdicción para resolver sobre la materia, como lo había hecho. La contestación fué de nuevo enmendada. Las defensas de méritos relativas a la falta de derecho a recobrar la propiedad o sus frutos y rentas y a la prescripción fueron de nuevo alegadas, y además fué presentada una contrademanda en donde se alegaba que los demandados en caso de que recobraran tenían derecho a recobrar también el importe de la deuda a favor de Mourraille & Martineau que había sido usada en las llamadas operaciones particionales para adquirir la finca 'Destino,' dicho importe con intereses al 6 por ciento.

"Bajo las cuestiones planteadas en esa contestación y contrademanda, el caso fué finalmente visto ante un jurado. Al comenzar el juicio el demandante, para probar su título, y después de establecer su derecho hereditario, presentó los documentos que acreditaban el hecho de la partición antes mencionada, y habiendo los demandados manifestado su intención de no presentar mayor prueba sobre esta cuestión, la corte, aplicando la conclusión a que había llegado al resolver la excepción de absoluta nulidad de la venta particional, instruyó al jurado que en la cuestión de título debería haber un veredicto a favor del demandante. Entonces se siguió el juicio sólo en cuanto al derecho a recobrar frutos y rentas, no presentándose prueba en cuanto a algún otro particular. Las partes convinieron en que de cualquier cantidad que fuera asignada por frutos y rentas, se deduciría una tercera parte bajo la base de que pertenecía a la viuda de Díaz, madre del demandante, en virtud del usufructo, no quedando por consiguiente dicha tercera parte envuelta en el juicio. Además, se admitió que la reclamación establecida en la contrademanda era válida y debía darse un veredicto en el sentido de que se recobrara la suma reclamada con sus intereses. Se presentó gran cantidad de prueba en cuanto a la cuestión de frutos y rentas y los demandados tomaron algunas excepciones a las resoluciones de la corte admitiendo prueba pertinente, basadas dichas excepciones en que con

la admisión de esa prueba se ofrecía oportunidad al cobro de daños indeterminados.    Los demandados pidieron específicamente se instruyera al jurado que si ellos habían procedido de buena fe no estaban obligados al pago de frutos y rentas, y habiéndose negado la corte, tomaron excepción.    Y también se tomó excepción en cuanto al derecho del demandante a recobrar frutos y rentas por la época en que era menor, fundándose en que durante ese tiempo era su madre la que administraba su propiedad.    Hubo veredicto y sentencia en cuanto a la finca y a los frutos y rentas durante todo el tiempo de la detentación ya por Mourraille & Martineau, ya por el propio Mourraille, o por los demandados causahabientes de éste.

"Veintisiete errores han sido alegados, pero nos limitaremos a considerar aquellas cuestiones que han sido planteadas en las alegaciones.    La validez y efecto de las llamadas operaciones particionales sobre el derecho a la finca en litigio, gobierna las demás cuestiones presentadas y nosotros por lo tanto, al igual que la corte inferior, consideraremos primeramente dicha cuestión.    Aun cuando es obvio que la propiedad dejada por el difunto y que pasó a su heredero el menor, estaba gravada por las deudas del difunto y sujeta a una venta legal para el pago de las mismas, creemos es indiscutiblemente cierto que había una absoluta carencia de facultades por parte de la viuda y del tutor *ad litem* para entregar la propiedad del menor en pago de una deuda reclamada contra los bienes de su padre.    Decimos esto porque la llamada partición y la venta de la propiedad por medio de contrato privado, estaban completamente fuera de las disposiciones de la ley sobre administración y venta de los bienes de un menor y por consiguiente dicho contrato privado no podía crear derecho alguno en conflicto con el título hereditario del menor.    Aun más, somos de opinión que por igual fundamento resulta concluyente que el juez de Primera Instancia de Humacao carecía en absoluto de jurisdicción para aprobar las llamadas voluntarias operaciones particionales y que consiguientemente ningún derecho puede nacer de tal aprobación. No nos detenemos a hacer referencia a las disposiciones de la ley local que fueron en absoluto ignoradas en la venta privada que se ha tomado por base de defensa, puesto que en realidad no se ha alegado que si el procedimiento seguido para la venta de la propiedad tenía el carácter que le hemos dado, estaba el mismo totalmente desautorizado por la ley local y en realidad prohibido por sus disposiciones expresas o tácitas.    En virtud de esta conclusión, opinamos que la corte inferior no cometió error alguno al desestimar la impugnación hecha en la contestación a la facultad del demandante para demandar en reivindicación bajo el fundamento de que debía primero pedir la res-

cisión de las operaciones particionales y obtener la invalidación de
la resolución del juez aprobando dichas operaciones; pues es impo-
sible concebir que existiera el deber preliminar de obtener la inva-
lidación de una cosa que ya era nula, o pedir la rescisión de lo que,
de acuerdo con la ley, jamás había tenido existencia alguna. Obser-
vamos que la alegación de que el demandante, como único heredero
de los bienes de su padre, y como tal heredero, dueño de todos los
bienes en litigio, no estaba facultado para demandar, cae por su
propio peso."

Basta leer lo que antecede, para comprender que en cuanto
a la cuestión esencial de si son o nó totalmente nulas las ad-
judicaciones en pago de deudas hechas directamente a los
acreedores en la partición de una herencia en que existen
menores de edad, sin haberse obtenido previamente la auto-
rización judicial que para la venta de bienes de menores en
general exigen las leyes, el criterio sustentado por la Corte
Suprema de los Estados Unidos está en conflicto con el que
algunos días antes sostuvo esta Corte Suprema de Puerto
Rico. La Corte Suprema de los Estados Unidos, que tiene
jurisdicción de apelación sobre esta Corte Suprema de Puerto
Rico, decidió que dichas adjudicaciones son nulas, y su juris-
prudencia, cualquiera que pueda continuar siendo el criterio
de todos o de algunos de los jueces de este tribunal, debe
prevalecer.

Resuelta esta cuestión fundamental en el sentido indicado,
procederemos al estudio y decisión de las demás envueltas en
los recursos interpuestos.

Los demandantes titularon este caso como "de reivindi-
cación," y si se examina cuidadosamente la sentencia apelada,
se verá que por ella se declaró sin lugar la demanda precisa-
mente en cuanto al extremo de la restitución a los deman-
dantes en la posesión y dominio de las tierras por ellos recla-
madas, extremo que no ha sido apelado por los demandantes
para ante este Tribunal Supremo. El juez de distrito en la
opinión que emitiera para basar su sentencia, hizo resaltar
el hecho de que la corte no llegó a adquirir jurisdicción sobre

todos los interesados en la herencia de Luz María del Rosario e invocó las decisiones de esta Corte Suprema de Puerto Rico en los casos de *Dávila* v. *Dávila,* 18 D. P. R. 114, y *Trinidad* v. *Trinidad,* 19 D. P. R. 647, en los cuales se estableció la doctrina de que el título de heredero no es suficiente por sí solo para reclamar para sí una porción determinada y concreta de una finca correspondiente a una herencia, sin haberse llevado antes a cabo la partición y adjudicación de los bienes hereditarios.

No nos es posible entrar a considerar y a resolver si la teoría sustentada por el juez sentenciador es correcta, y si la jurisprudencia invocada por el mismo es aplicable a este caso. Ya hemos dicho que el pronunciamiento relativo a la restitución a los demandantes en la porción de las fincas reclamadas en la demanda, no fué apelado y no puede ser, por tanto, revisado por nosotros.

La situación anómala en que nos encontramos, dificulta la consideración completa de este caso. Sin embargo, es lo cierto que la demanda contenía varias súplicas, entre ellas la de la nulidad de las adjudicaciones a que se refiere la demanda, nulidad que según la teoría adoptada finalmente por la corte sentenciadora llegó a ser la única cuestión que podía decidirse por ella en definitiva en este pleito. Aplicando la jurisprudencia de la Corte Suprema de los Estados Unidos es necesario reconocer que las adjudicaciones que se hicieron a los demandados Rucabado y Otero son totalmente nulas en cuanto a la parte que pudiera corresponder a los herederos menores de edad en los inmuebles adjudicados, y como los dichos demandados Rucabado y Otero fueron oídos y vencidos en juicio, opinamos que la sentencia apelada puede subsistir en cuanto a ellos en la forma que la dictara el juez sentenciador.

La reclamación de los frutos y productos de los condominios a que se refiere la demanda, es accesoria a la acción de reivindicación ejercitada por los demandantes y declarada

sin lugar por la corte.   Todo lo que hemos dicho en cuanto a la acción principal, es, en tal virtud, aplicable a la accesoria.

Con referencia a las costas, no habiéndose demostrado que la corte de distrito al actuar en la forma en que lo hizo, abusara de su discreción, la conclusión a que llegara en su sentencia no debe ser alterada por nosotros.

Habiendo en consideración todo lo expuesto, opinamos que deben declararse sin lugar los recursos de apelación interpuestos por los demandantes y por los demandados, y, en su consecuencia, confirmarse la sentencia apelada en todos los pronunciamientos de la misma que han sido objeto de revisión en este tribunal.

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SR. WOLF.

Estoy conforme con todo lo que precede.   La necesidad de la autorización judicial previa es un criterio que yo he sustentado siempre.   En la primera opinión que se emitió en este · caso estuve conforme porque habiendo considerado las varias resoluciones de la Dirección General de los Registros sobre la materia, parecía como sentado conclusivamente que cuando en una partición de herencia existían menores y se adjudicaban a un heredero bienes para el pago de las deudas del causante, bastaba la aprobación judicial dada después, y en verdad yo no podía distinguir ese caso de aquél en que en la partición se adjudican directamente los bienes al acreedor en pago de su crédito.   Por eso perdí de vista que en uno y otro caso estaba envuelta fundamentalmente la enajenación ·de bienes de menores, para lo cual la autorización judicial previa era siempre un requisito indispensable.

OPINIÓN DEL JUEZ ASOCIADO SR. ALDREY CON LA CUAL ESTÁ CONFORME EL JUEZ PRESIDENTE SR. HERNÁNDEZ.

Muerto Luz María del Rosario en el pueblo de Cayey de esta isla el 25 de octubre de 1902 sin haber otorgado testamento, fueron declarados herederos suyos *ab intestato* la

viuda y sus seis hijos legítimos.    Por sentencia fueron declarados hijos naturales suyos reconocidos y con derecho a participar de su herencia otros seis hijos de los cuales uno le premurió y fué representado por su hija.

Para el reparto de los bienes de Luz María del Rosario entre todos esos herederos fueron nombrados contadores y partidores los abogados Don Antonio Sarmiento y Don Luis Muñoz Morales quienes llevaron a efecto las operaciones de inventario, avalúo, liquidación y división de los bienes y. aprobadas por el Tribunal de Distrito de Humacao, las protocolizaron en una notaría en 4 de junio de 1904.    En esas operaciones estuvieron representados los hijos legítimos por un defensor judicial a causa de su minoría de edad y de los intereses encontrados con su madre, y se reconocieron deudas a favor de Mateo Rucabado, Manuel Otero Valera, Robustiano Meléndez y José Ramírez Muñoz para cuyo pago se les adjudicaron determinadas fincas de la herencia que privativamente pertenecían al causante de las que entraron en posesión y como suyas las inscribieron en el registro de la propiedad.    Según esa escritura a los hijos legítimos correspondió una tercera parte en el haber hereditario de su padre.

Con tales antecedentes se estableció este pleito por los hijos legítimos de Luz María del Rosario y fundándose en que no se pudieron enajenar esos bienes a favor de los acreedores sin autorización judicial por ser ellos entonces menores de edad y en que en las fincas así enajenadas les corresponde y pertenece la propiedad y dominio de una tercera parte solicitaron del tribunal lo siguiente: 1°. que se declare que son nulas y carecen de fuerza y valor legal las adjudicaciones que se hicieron a los acreedores en lo que respecta a una tercera parte; 2°. que las inscripciones verificadas en el registro de la propiedad en virtud de esas enajenaciones deben ser canceladas en cuanto a una tercera parte; 3°. que las referidas personas a quienes se adjudicaron esas fincas les paguen cierta cantidad por los frutos y rentas producidos y dejados de percibir por los demandantes durante

el tiempo en que han estado desposeídos de sus condominios; 4°. que se restituya a los demandantes en la posesión y dominio de una tercera parte de todas y cada una de las fincas adjudicadas, y 5°. que los demandados paguen las costas y honorarios del abogado de los demandantes.

En el juicio prescindieron los demandantes de sus reclamaciones contra Robustiano Meléndez y José Ramírez y limitada así su demanda en cuanto a Rucabado y Otero el Tribunal de Distrito de Guayama que conoció del procedimiento, dictó sentencia declarando con lugar la demanda en cuanto a los incisos primero y segundo de la súplica y sin lugar en cuanto a los incisos tercero y cuarto de la misma y de acuerdo con dichos incisos primero y segundo falló y decretó: 1°. que son nulas y carecen de fuerza y valor alguno en cuanto a una tercera parte las adjudicaciones de fincas hechas a Rucabado y a Otero en las operaciones divisorias de los bienes de Luz María del Rosario; 2°. que deben cancelarse en el registro de la propiedad las inscripciones de tales enajenaciones en cuanto a la tercera parte que reclaman los demandantes, todo sin especial condena de costas y sin perjuicio de cualquier derecho que los demandantes puedan tener por los frutos y rentas alegados y no probados.

Los demandados Rucabado y Otero interpusieron apelación contra esa sentencia que les es perjudicial solamente en dos extremos y también apelaron los demandantes quienes consignaron en su escrito interponiendo el recurso que no están conformes con aquella parte de la sentencia que no les concedió las rentas y productos de las fincas en cuestión y que les negó las costas, gastos y honorarios de abogado.

Ambos recursos fueron resueltos por esta corte por sentencia de 24 de mayo de 1915 declarando sin lugar el de los demandantes y con lugar el de los demandados por lo que fué revocada la sentencia inferior en la parte en que fué apelada por los demandados y desestimada la demanda por entender que no existía nulidad en las adjudicaciones que en pago de deuda se hicieron a los demandados; mas habiendo

pedido los demandantes la reconsideración de la sentencia, principalmente en virtud de lo resuelto posteriormente por el Tribunal Supremo de los Estados Unidos en el caso de *Longpré* v. *Díaz,* 237 U. S. 512, se acordó la celebración de una nueva vista del caso.

Los suscribientes estamos conformes con los dos jueces que firman la opinión escrita por el Sr. Toro en cuanto a los motivos que tuvimos para reconsiderar la anterior sentencia y para ordenar una nueva vista del caso.

Estudiado nuevamente este caso, sostenemos otra vez que la sentencia debe ser revocada y la demanda desestimada, así como que el caso de *Longpré* v. *Díaz, supra,* no puede ser considerado en este recurso discrepando en estos extremos de nuestros dos compañeros.

Los demandantes no solamente titularon su demanda como "de reivindicación" sino que claramente ejercitaron la acción reivindicatoria pues alegaron ser dueños por título de herencia de una tercera parte de ciertas fincas que poseen los demandados y pidieron en el cuarto extremo de su súplica que se les restituyera en la posesión y dominio de tal tercera parte, petición que les fué negada por la corte sentenciadora no obstante lo cual en el escrito de apelación consignaron su inconformidad con la sentencia sólo en cuanto les niega los frutos de esa tercera parte que reclaman como suya y las costas. Si, pues, la sentencia niega a los demandantes la restitución de esa tercera parte que reclaman de las fincas y no apelaron de esa parte de la sentencia, no solamente carecen de derecho para obtener los frutos que haya producido o podido producir tal tercera parte por ser esa reclamación accesoria de la reivindicatoria denegada, por lo que la apelación de los demandantes en cuanto a ese extremo no puede prosperar, sino que la corte carece de jurisdicción para considerar tal cuestión sobre restitución por falta de apelación en cuanto a ella, y a ningún fin práctico conduce la consideración del caso de *Longpré* v. *Díaz, supra,* porque declarado, y no apelado, que los demandantes no tienen derecho a que

se les entregue la tercera parte que reclaman como suya en las mencionadas fincas, no cabe considerar ni declarar si el título que ostentan los demandados es o nó nulo, pues tal decisión sería efecto del derecho a reivindicar y cuando este derecho se niega no puede discutirse el título del demandado. Antes de que pueda decidirse sobre la nulidad del título de una persona de quien se trata de reivindicar determinada propiedad, es preciso que se pruebe el título de la persona que pretende la reivindicación y como en este caso la corte negó la reivindicación que se pretendía por los demandantes, no procedía hacer declaración respecto al título de los demandados.

Es cierto que además de las alegaciones para la acción reivindicatoria contiene la demanda otras para demostrar que el título de los demandados es nulo y se solicita que así se declare, pero como en este pleito el título con que reclaman los demandantes no tiene que surgir de la declaración de nulidad del de los demandados, tales alegaciones sobre nulidad han de considerarse únicamente como un anticipo de defensa, *Oliver* v. *Oliver,* resuelto por nosotros en julio 30 de 1915, y por consiguiente no debe resolverse cuando no prospera la acción a la cual se opone.

En consonancia con la anterior doctrina, al resolver recientemente en 3 de diciembre de 1915 el caso de *Cristián et al.* v. *Escobar et al.,* dijo este Tribunal Supremo: "En cuanto a las nulidades que se piden en la demanda, como ellas no son causa sino efecto de la acción principal de reivindicación siendo ésta improcedente, huelga hacer pronunciamiento sobre aquéllas. Sentencias del Tribunal Supremo de España de 16 de octubre de 1873, 17 de enero de 1889, 6 de abril de 1889 y 13 de febrero de 1882, y decisiones de esta Corte Suprema en los casos de *Sucesión Nieves* v. *Sucesión Sánchez,* 17 D. P. R. 877, y *Oliver* v. *Oliver,* resuelto en julio 30 del corriente año."

Careciendo los demandantes de acción para reivindicar la tercera parte de las fincas a que se refieren, pues a eso

equivale el pronunciamiento de la sentencia, no apelado, denegatorio de la restitución, ¿con qué derecho pueden pretender las nulidades y cancelaciones que se les han otorgado en la sentencia? Este pronunciamiento es incompatible con aquél. Hay contradicción *in terminis.*

En cuanto a la apelación·de los demandantes por no habérseles concedido las costas en el tribunal inferior, estamos conformes con nuestros otros dos compañeros en el motivo que han expuesto para que no prospere el recurso. Acaso los demandantes hayan seguido un procedimiento inadecuado para los fines que persiguen. No nos incumbe indicarles cuál sea el apropiado.

Por las razones expuestas debe declararse sin lugar el recurso interpuesto por los demandantes y con lugar el de los demandados, y en su consecuencia la demanda debe ser desestimada sin especial condena de costas.

> *Declarado sin lugar el recurso de apelación interpuesto por los demandantes, y en cuanto al recurso de apelación interpuesto por los demandados, fué confirmada la sentencia, por empate en la votación.*

El Juez Asociado Sr. Hutchison no intervino en la consideración de este recurso.