CAMILO AMADEO VARGAS, demandante y apelante, *v.* COMPAÑÍA AZUCARERA DEL TOA, demandada y apelada.

Núm. 8213.—*Sometido:* Marzo 20, 1941. *Resuelto:* Mayo 28, 1941.

*Enrique Lefebre,* abogado del apelante; *Salvador Suau,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata de una sentencia sobre las alegaciones dictada en contra del demandante. La certeza de los hechos alegados

en la demanda fué admitida a los fines de la excepción. La aplicación del derecho debe serlo, en tal virtud, a base de esa certeza.

El pleito se inició por Camilo Amadeo Vargas, mayor de edad, contra Compañía Azucarera del Toa, una corporación doméstica. El demandante es hijo natural reconocido de Jesús M. Amadeo Antonmarchi. El padre falleció intestado en junio 27, 1927. En mayo 29, 1928, la corte de distrito de San Juan declaró herederos suyos a sus hijos Jesús M. Amadeo García, Julio Amadeo Ortiz y Sadi Amadeo, y al demandante en aquel entonces menor de edad, Camilo Amadeo Vargas.

El causante poseía al morir como dueño dos fincas rústicas en Toa Alta una de 278 cuerdas y otra de 40. En junio 30, 1928, por escritura pública inscrita en el Registro de la Propiedad se liquidó su herencia concurriendo los tres hermanos mayores de edad personalmente y el cuarto, el demandante, que tenía quince años de edad, representado por su madre con patria potestad Carmen Vargas, haciéndose constar que las deudas de la herencia subían a $11,120 y que no existía efectivo para satisfacerlas, motivo por el cual se adjudicaron al coheredero Jesús M. Amadeo García para pagarlas 126.30 cuerdas valoradas en $7,500 de la finca mayor y la totalidad de la finca menor tasada en tres mil. Sostiene el demandante que como heredero de su padre le corresponde la cuarta parte pro indivisa de las 126.30 cuerdas y de las cuarenta cuerdas así adjudicadas, condominios que valen en la actualidad $7,500 y $2,500 respectivamente.

El coheredero adjudicatario vendió a la demandada por $24,290 en marzo 26, 1929, y ésta posee actualmente, las 126.30 y las cuarenta cuerdas. Para la adjudicación no se obtuvo la autorización que determina la ley núm. 32 de marzo 9, 1911 (pág. 126). La aprobación de la partición se impartió por la corte de distrito sin que los herederos aportaran evidencia para acreditar la certeza de las deudas, ni para comprobar si la adjudicación de los inmuebles en pago

de las mismas fué justa y razonable, inscribiéndose la adjudicación y la venta en el registro de la propiedad.

Se pide una sentencia que declare nulos e inexistentes en derecho en cuanto a una cuarta parte las adjudicaciones y que esa cuarta parte es propiedad del demandante con sus frutos y utilidades, condenando a la demandada a así reconocerlo y a entregarle los dichos frutos y utilidades desde la fecha de la adquisición, con más las costas y honorarios si se opusiere.

Contra la demanda adujo la demandada las excepciones previas de ser ambigua, ininteligible y dudosa, de defecto de parte demandada y de falta de causa de acción. Las dos primeras fueron declaradas sin lugar y con lugar la última, y estimando la corte que la demanda no era susceptible de enmienda, procedió a dictar sentencia en abril 18, 1940, desestimando la acción con costas.

Contra esa sentencia fué que el demandante interpuso el presente recurso de apelación cuya vista fué celebrada en marzo 20 último.

¿Surge de los hechos la inexistencia alegada? Veámoslo.

En junio 1, 1915, la Corte Suprema de los Estados Unidos resolvió en el caso de *Longpré* v. *Díaz*, 237 U. S. 512, que bajo las leyes de Puerto Rico tales como regían en 1892, una viuda y un tutor *ad litem* no tenían autoridad para entregar los bienes de un menor en pago de una deuda de su difunto padre por medio de venta privada, ni existía facultad en juez alguno para aprobar una partición voluntaria como la que estaba envuelta en el pleito, resolviendo además que siendo la venta inexistente, el menor, al llegar a la mayor edad, tenía derecho a reivindicar sus bienes.

Muy pronto—enero 28, 1916—tuvo esta corte la oportunidad de aplicar la jurisprudencia en el caso de *Del Rosario et al.* v. *Rucabado et al.*, 23 D.P.R. 473, decidiendo que las adjudicaciones en pago de deudas hechas directamente a los

acreedores en la partición de una herencia en que existían menores de edad, sin haberse obtenido la autorización judicial previa que exigía la ley, eran inexistentes.

Y poco después—junio 24, 1916—en *Ex parte Sotomayor et al.,* 24 D.P.R. 185, 193, dijo esta corte que la jurisprudencia era aplicable al caso en que había menores de edad y se adjudicaban al cónyuge viudo inmuebles de la herencia para el pago de deudas.

Si la ley hubiera subsistido tal como entonces regía, la inexistencia de la partición en este caso sería manifiesta y la reivindicación procedente. Pero en 1917 la legislatura adicionó a la Ley de procedimientos legales especiales de 1905 el artículo 71A que lee como sigue:

"Artículo 71A.—Siempre que se verificase una partición de herencia, en la cual hubiere interesados menores de edad, o incapaces, si se adjudicaren bienes de la herencia en pago de deudas, a herederos, o extraños; deberá someterse a la aprobación de la corte de distrito competente, y si ésta, con audiencia del fiscal, quedare satisfecha de la certeza de la deuda y de que la adjudicación en pago de la misma es razonable y justa, podrá aprobar dicha adjudicación en pago, sin necesidad de la subasta pública." Ley núm. 44 de 1917, vol. 2, pág. 343.

Pasaron alrededor de trece años sin que se suscitara cuestión alguna ante este tribunal con motivo de la aplicación en la práctica del nuevo precepto legal. En 1931 se presentaron para su inscripción en el Registro de la Propiedad de San Germán las operaciones particionales de los bienes relictos por doña Rosario Cancel en las que existían menores y se adjudicaron bienes para el pago de deudas. No obstante haberse aprobado dichas operaciones por la corte del distrito el registrador negó la inscripción fundándose en *Ex parte Sotomayor,* supra, y *Sucn. Alvarez* v. *Registrador,* 16 D.P.R. 602. Recurrió el interesado, y esta corte en su opinión, emitida por su Juez Asociado Sr. Aldrey, después de transcribir el artículo 71A adicionado a la Ley de procedimientos legales especiales de 1905, dijo:

"En este caso, en el que la partición se redujo a dividir los bienes gananciales, dando su parte al cesionario del viudo supérstite y la otra mitad en común a los herederos, siendo las otras operaciones de adjudicación de bienes para el pago de deudas, la corte, con audiencia y conformidad del fiscal, aprobó la partición como justa, razonable y equitativa, aprobando así la certeza de la deuda y que la adjudicación hecha para su pago es razonable, por lo que no es necesaria la subasta pública." *Mercader* v. *Registrador,* 42 D.P.R. 698, 700.

Nada más se ha dicho o resuelto luego en contrario sobre el particular. La ley existe. Sus términos son claros. Y lo expresado en *Mercader* v. *Registrador,* supra, directo.

A partir de la vigencia de la ley—la de 1917 arriba transcrita—no es necesaria la previa autorización de la corte ni la venta en pública subasta aunque existan menores de edad entre los herederos cuando se adjudican bienes de la herencia a un coheredero para el pago de deudas hereditarias, bastando que se siga el procedimiento marcado en el artículo 71A de la Ley de procedimientos legales especiales.

Y como ése es este caso, no tiene razón el·demandante y apelante al invocar la ley núm 32 de 1911, pág. 126. Tal ley no le es aplicable.

Despejada de ese modo la situación, veamos si de la demanda puede deducirse la inexistencia de la adjudicación y por consiguiente de la venta a la luz de la ley en vigor. Copiaremos textualmente todo lo que en ella se dice a ese respecto. Es así:

". . . . y la aprobación por la Corte de Distrito de San Juan, P. R. se impartió sin que los herederos aportaran evidencia alguna para acreditar la certeza de las deudas de la herencia, ni para determinar si la adjudicación de los inmuebles en pago de las mismas fué justa y razonable, inscribiéndose así la adjudicación y la venta en el Registro de la Propiedad."

No se alega, pues, la falta de la aprobación. Al contrario, se afirma. No se imputa fraude a la demandada en la adquisición, ni conocimiento de que la aprobación de la corte

se hubiera obtenido en violación de la ley. Todo lo que se consigna es que la corte impartió su aprobación "sin que los herederos aportaran evidencia", alegación que no excluye la posibilidad de que el propio documento sometido contuviera todo lo necesario para que la corte quedara satisfecha de la certeza de la deuda y de lo razonable y justo de la adjudicación.

No se trata del ejercicio de una acción de nulidad dentro del término de cuatro años. Se parte de la inexistencia de la adjudicación. Y la acción fué establecida después de diez años no ya de hecha la adjudicación al coheredero, de aprobada por la corte, y de inscrita en el registro, si que de vendidas por él a la demandada las fincas que se le adjudicaron.

Constituye el que se hace en tal virtud no un ataque directo si que colateral al procedimiento de aprobación, basado exclusivamente en la falta de evidencia, imposible a estas alturas. A este respecto parece conveniente transcribir lo que dice en su opinión la corte sentenciadora:

"Pero se alega que los herederos no aportaron evidencia alguna para acreditar la certeza de las deudas de la herencia ni para determinar si la adjudicación de los inmuebles en pago de las mismas fué justa y razonable. Y la cuestión a resolver ahora, si por ese motivo, puede atacarse colateralmente la sentencia de esta corte aprobando dichas operaciones particionales. La regla prohibiendo ataque colateral de sentencias se aplica generalmente a toda clase de sentencias, decretos u órdenes dictadas por cortes de jurisdicción competente en toda clase de procedimientos judiciales. 34 C. J. 514, sec. 816. Tanto en *González* v. *Anglada,* 33 D.P.R. 1021, como en *Fernández* v. *Ayllón,* 69 L. Ed. 209, se sostuvo que la sentencia dictada en un procedimiento sobre autorización judicial para enajenar bienes de menores de acuerdo con el artículo 80 de la Ley de Procedimientos Legales Especiales (artículo 614, Código de Enjuiciamiento Civil, Ed. 1933) no estaba sujeta a ser atacada colateralmente, y que si la corte tenía jurisdicción sobre la persona y sobre la materia, ningún error o irregularidad que no fuera jurisdiccional podía invalidarla. No vemos razón alguna por qué los mismos principios no deban ser aplicables a las sentencias dictadas en procedimientos sobre aprobación judicial de particiones de acuerdo

con el artículo 605, supra; y si ello es así, la próxima cuestión a considerar es si la falta de presentación de prueba por parte de los herederos de la certeza de la deuda y de la justicia y razonabilidad de la adjudicación priva de jurisdicción a la corte para impartir su aprobación a las operaciones particionales en forma tal que la sentencia dictada esté sujeta a un ataque colateral.

"Podemos afirmar que las cortes cuantas veces se han confrontado con la situación expresada, o sea; una sentencia dictada sin haberse presentado evidencia alguna, otras tantas han sostenido que es simplemente errónea y no es nula. En *George* v. *Dill,* 120 N. W. 448, dijo la Corte Suprema de Nebraska:

" 'Indeed, the courts have gone so far as to say that a judgment entered in the absence of any evidence is valid and binding until set aside by some regular proceeding. In *Clark* v. *Superior Court,* 55 Cal. 199, it is said: "If, after acquiring jurisdiction of the parties and the subject-matter, a superior court should order a judgment for one of the parties without a trial, such judgment would not be 'without or in excess of the jurisdiction' of the court, although it might be erroneous, and in such case the only remedy would be by appeal." . . . . . If, after acquiring jurisdiction of the parties and subject-matter of an action a superior court should order judgment in favor of one of the parties without a trial, that judgment would neither be without nor in excess of the jurisdiction of such tribunal, although it might be erroneous as any judgment might be, if rendered upon the naked pleadings of a case where the pleadings raised a material issue.' "

Cita la corte extractos de lo resuelto en el mismo sentido en los casos de *Ex parte Bennett,* 44 Cal. 84; *Grieshaber* v. *Knoepfel,* 198 N. Y. S. 302, y *Life & Casualty Ins. Co.* v. *Clark,* (Tenn. 1932) 54 S. W. (2d) 965; se refiere a 15 Cal. Jur., sección 158, pág. 82, n. 2; 34 C. J. 562, sección 862, n. 23, y termina expresando:

"Los fundamentos de la regla anteriormente expresada son claros: se trata de un principio de orden público para mantener la santidad y la seguridad de las sentencias judiciales. Obligar a un comprador de un adjudicatario en una partición donde haya habido menores ir más allá del récord e investigar si hubo o no hubo prueba para satisfacer a la corte de los extremos exigidos por el artículo

,605, supra, sería colocar un peso indebido sobre sus hombros. Todo lo que la ley exige es que la corte tenga jurisdicción sobre la materia y sobre las personas.''

Bajo esas circunstancias y tratándose como se trata de una demanda que había sido ya enmendada, está justificada la actitud que asumió la corte de distrito resolviendo el pleito en definitiva al declarar con lugar la excepción.

No debe en modo alguno interpretarse nuestro criterio como que consideramos de poca importancia el cumplimiento estricto de la nueva ley. Una corte de distrito y un fiscal que se den cuenta exacta de la responsabilidad que esa ley les impone, deben exigir evidencia clara y terminante de la certeza de la deuda y de la justicia de la adjudicación en cada caso. Su intervención constituye la última garantía que la ley otorga a personas incapaces de defenderse por sí mismas. Y esa garantía debe ser una realidad, no un mero trámite.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*