ARVELO ET AL., DEMANDANTES Y APELANTES, *v.* BANCO TERRITO-
RIAL Y AGRÍCOLA DE PUERTO RICO, DEMANDADO Y APELADO.

## APELACIÓN procedente de la Corte ·de Distrito de San· Juan, Sección 1ª., en pleito sobre indemnización de daños y perjuicios.

### No. 1365.—Resuelto en julio 27, 1917.

EJECUCIÓN DE HIPOTECA—REQUERIMIENTO DE PAGO—PROCEDIMIENTO SUMARIO HI-
POTECARIO—FALLECIMIENTO DEL DEUDOR ANTES DE COMENZARSE EL PROCEDI-
MIENTO—REQUERIMIENTO A LOS HEREDEROS.—De acuerdo con el artículo 128
de la Ley Hipotecaria y 171 del reglamento para su ejecución, el requiri-
miento de pago debe entenderse con el dueño de la finca hipotecada si reside
en el lugar en que radica la finca, y se sabe su domicilio; pero cuando el dueño
fallece antes de comenzarse el procedimiento sumario hipotecario, no debe re-
querirse de pago al que se hallare al frente de la finca en cualquier concepto
legal, sino a los herederos quienes continúan su personalidad y lo sustituyen en
todos sus derechos así activos como pasivos transmisibles, pudiendo excusarse
el requerimiento personal de los herederos sólo en el caso de que no residan en
el lugar de radicación de la finca hipotecada y se ignorare su domicilio.

ID.—REQUERIMIENTO A LA VIUDA DEL DEUDOR.—A falta de requerimiento de pago
a los miembros de una sucesión en procedimiento sobre ejecución de hipo-
teca, no es legal el hecho a la viuda del deudor por hallarse al frente de
la finca hipotecada cuando el requerimiento no se ha hecho a ella ya como
apoderada de hijos mayores de edad o como representante de menores.

SUCESIÓN—PERSONALIDAD JURÍDICA—MIEMBROS QUE LA COMPONEN—PARTES DE-
MANDANTES Y DEMANDADAS.—La sucesión como persona jurídica no existe
en nuestro derecho. Cabe que una sucesión sea parte demandante o deman-
dada, pero para ello es necesario que se particularice o individualice expre-
sando los miembros que la componen. No es una entidad legal indepen-
diente de los herederos. Estos son los que la determinan y son los que deben
aparecer como demandantes o demandados.

EJECUCIÓN DE HIPOTECA—SUBASTAS—PUBLICACIÓN DE EDICTOS POR TÉRMINO ME-
NOR QUE EL SEÑALADO—NULIDAD DE VENTA.—Las formalidades señaladas en
los artículos 128 de la Ley Hipotecaria y 171 del reglamento, para el anun-
cio de la primera subasta, deben llenarse ·también en las subastas posterio-
res que se celebren y por tanto cuando ha mediado entre la primera publi-
cación del edicto de venta y la subasta un término inferior al marcado por
la ley, la adjudicación hecha de la finca hipotecada al acreedor en pago de
la deuda está viciada de nulidad. El presente caso se distingue del de *Henna
et al.* v. *Saurí y Subirá,* 22 D. P. R. 836, pues no es la misma posición la
de un segundo acreedor hipotecario que la del deudor principal.

ID.—EDICTOS—PUBLICACIÓN EN SITIOS PÚBLICOS Y EN LA GACETA.—El artículo
172 del reglamento para la ejecución de la Ley Hipotecaria no deja a la
voluntad del acreedor la publicación de los edictos en los sitios públicos
que expresa *o* ·en la *Gaceta* de la Isla, pues eso sería contrariar el precepto
general de la Ley Hipotecaria, artículo 128, párrafo 3, que ordena por modo
expreso que a los treinta días de verificado el requerimiento de pago se
publicarán los edictos en las Gacetas de la Isla.

DAÑOS Y PERJUICIOS — NULIDAD DE PROCEDIMIENTO HIPOTECARIO — REIVINDICA-
CIÓN.—En una demanda por daños y perjuicios fundada en la nulidad de
un procedimiento hipotecario por virtud del cual fué adjudicada al ejecu-
tante (actual demandado) la finca subastada por la imposibilidad legal
en que se encuentra el demandante de ejercitar acción alguna contra el actual
poseedor por haberla adquirido del demandado, de buena fe, y sin conoci-
miento de aquella nulidad, es suficiente se consignen estos hechos y los deter-
minantes de la nulidad, ya que el demandante no estaba en el deber de soli-
citar previamente la declaratoria de la nulidad para que pudiera ser viable
la indemnización, como tampoco estaba obligado a solicitar dicha nulidad
en el caso de que pudiera ejercitar contra el demandado la acción reivindi-
catoria con relación a la finca subastada.

ID.—PRESCRIPCIÓN.—Por las razones aducidas al tratar igual cuestión en el caso
de *Carmona et al* v. *Cuesta et al.*, 20 D. P. R. 229, ratificada en 23 D. P. R.
685, se desestima la excepción de prescripción en este caso fundada en el
número 2 del artículo 1968 del Código Civil Español.

ID.—EXPOSICIÓN DEL CASO SOBRE LAS CUESTIONES ENVUELTAS EN LA SENTENCIA Y
APELACIÓN.—El hecho de que la exposición del caso preparada solo contiene
la evidencia aportada al juicio sobre las cuestiones envueltas en la senten-
cia y apelación contra la misma, sin incluir la que se hubiere introducido
sobre daños y perjuicios, no es razón legal para sostener la sentencia ape-
lada, existiendo las causas que se alegan como originarias de esos daños
y perjuicios. A la corte inferior toca determinar y fijar los daños y per-
juicios cuya indemnización se pide.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. José Tous Soto.*

Abogado del apelado: *Sr. Juan de Guzmán Benítez.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del
tribunal.

El recurso de apelación sometido a nuestra reconsidera-
ción ha sido interpuesto por la parte demandante contra sen-
tencia que en 15 de marzo de 1915 pronunció la Corte de Dis-
trito de San Juan, Sección 1ª., declarando sin lugar la de-
manda y la reconvención con costas a la parte demandante.

En dicha demanda solicitan los demandantes sea conde-
nado el demandado, Banco Territorial y Agrícola de Puerto
Rico, a pagarles la suma de $70,000 como daños y perjuicios
por el valor de la finca que le fué adjudicada en procedimiento
sumario seguido por dicha corporación bancaria contra la
Sucesión de Hilario Arvelo, y de las rentas producidas desde
26 de septiembre de 1898 hasta la fecha de la demanda, 7 de
septiembre de 1913, condenando además a la parte deman-

dada al pago de todas las costas, costos, gastos y honorarios, y concediéndoles a los demandantes además cualquier otro remedio compatible con sus alegaciones.

El demandado opuso a la demanda la excepción previa de falta de hechos suficientes para determinar una causa de acción y además la de prescripción fundada en los artículos 1301 y caso 2°. del 1968 del Código Civil Español, concordantes con los artículos 1268 y caso 2°. del 1869 del Código Civil Revisado. Al formular su contestación aceptando unos hechos y negando y rectificando otros de la demanda, formuló reconvención para que en el caso de que la demanda fuera declarada con lugar condenándolo a pagar una suma cualquiera a la parte demandante, se la condenara a pagar al Banco Territorial y Agrícola la cantidad de $9,965.80 de capital, más $13,955.94 de intereses devengados hasta el 30 de junio de 1913, y los nuevos intereses al 9% anual que sobre dicho capital se devenguen hasta el día del pago, más $88.46 de la comisión de pago anticipado, más $361.22 de las costas hechas por el banco en el procedimiento hipotecario, con pronunciamiento de que hasta tanto las demandantes entreguen al Banco Territorial y Agrícola las cantidades que de la reconvención deben pagarle estarán privadas de recibir y no estará obligado el banco a entregar las que en su caso deba pagar a los demandantes en virtud de la demanda.

De las alegaciones de ambas partes en combinación con las pruebas practicadas en el juicio según han venido en el récord resultan los siguientes hechos:

1°. Que por escritura pública de 3 de junio de 1896 Hilario Arvelo y Ríos constituyó hipoteca voluntaria a favor del Banco Territorial y Agrícola sobre cierta finca rústica situada en el barrio de Jayuya del término municipal de Utuado, inscrita a su favor en el registro de la propiedad, para garantir un crédito por valor de 15,000 pesos provinciales que reconoció adeudar al Banco Territorial y Agrícola y se obligó a pagar bajo determinadas condiciones.

2°. Que vencido dicho crédito hipotecario, el Banco Terri-

torial y Agrícola de Puerto Rico siguió para su cobro contra la Sucesión de Hilario Arvelo el procedimiento sumarísimo de la Ley Hipotecaria ante el extinguido Juzgado de 1ª. Instancia de Utuado, sin que en la demanda o escrito inicial del procedimiento se alegara la muerte de Hilario Arvelo, ni quiénes eran sus herederos ni si habían aceptado la herencia, solicitándose en la súplica fuera requerida de pago la Sucesión de Hilario Arvelo Ríos, a lo que proveyó el juzgado ordenando el requerimiento de la Sucesión de Hilario Arvelo Ríos o de la persona que estuviera al frente de la finca hipotecada en cualquier concepto legal;

3º. Que el requerimiento ordenado se llevó a efecto por el escribano actuario del procedimiento en la forma siguiente: "En 23 de febrero de 1898 me constituí acompañado del Alguacil Don Miguel Arnau en el barrio de Jayuya, domicilio de la Sucesión de Don Hilario Arvelo Ríos, y teniendo presente a la viuda de dicho señor que dijo llamarse Doña Florentina Vega, que se halla al frente de la finca de que se trata en este expediente, la requerí para que dentro de treinta días verifique el pago de los 15,547 pesos 94 centavos reclamados por el Banco Territorial y Agrícola de Puerto Rico, con más 3,000 pesos señalados para intereses y costas, bajo apercibimiento de procederse a la subasta de los bienes hipotecados, haciéndosele entrega al mismo tiempo de la copia presentada por el procurador Casalduc, no firma porque dijo no saber, a su ruego lo hace Don Nemesio Arvelo, luego del alguacil por ante mí de que doy fe. Miguel Arnau. Nemesio Arvelo. Carlos Buitrago." La viuda de Arvelo era conocida con los nombres de Florentina, Flores y Sinforiana.

4ª. Que no habiéndose hecho el pago dentro del término señalado, el banco pidió la subasta de los bienes hipotecados y así se ordenó por auto de 28 de marzo de 1898, señalándose la subasta para el día 25 de abril siguiente. En el mismo día 28 de marzo se libró el edicto para la subasta, se fijó una copia al público en el sitio de costumbre, en el Juzgado de Utuado, y se entregó otra copia al procurador del banco para

su inserción en la Gaceta, cuya inserción fué hecha en los números de dicho periódico oficial correspondiente a los días 5, 6 y 7 de abril citado. La primera subasta quedó desierta por no haberse presentado postor alguno.

5ª. Que a instancia del ejecutante y por auto de 23 de mayo de 1898 el juzgado dispuso una segunda subasta, con rebaja del 25% de la tasación, para tener efecto el día 20 de junio de 1898. En la propia fecha del auto se libró el edicto dispuesto, se fijó una copia en las puertas del juzgado, y se entregó otra al procurador del banco para insertarla en la Gaceta, cuya inserción se hizo en los números correspondientes a los días 31 de mayo y 1 y 2 de junio de 1898. También la segunda subasta quedó desierta por no haberse presentado postor alguno.

6º. Que a instancia del ejecutante y por auto de 8 de julio de 1898, el juzgado dispuso la tercera y última subasta por el precio irreductible de las cantidades de que debía responder la finca hipotecada, para tener efecto el día 4 de agosto. En el referido día 8 de julio, se libró el edicto dispuesto, se fijaron dos copias en los lugares públicos de costumbre y se entregó otra copia al procurador del ejecutante para insertarla en la Gaceta Oficial, habiéndose hecho la inserción en los números de dicho periódico correspondientes a los días 17, 19 y 21 del propio julio. También esa tercera subasta quedó desierta por no haberse presentado postor alguno.

7º. Que en 20 de septiembre de 1898 el banco ejecutante pidió la adjudicación de los bienes en pago del crédito reclamado y por auto del 26 se le adjudicó la finca hipotecada por la cantidad de 15,546 pesos 94 centavos moneda provincial, cuya adjudicación fué notificada a la viuda de don Hilario Arvelo en el barrio de Jayuya, en el domicilio de la Sucesión Arvelo, según expresa el escribano, quien hizo la notificación con lectura y copia del auto de adjudicación, no firmando la viuda porque dijo no saber y haciéndolo a su ruego el testigo don Ramón Arvelo.

8º. Que a pedimento del banco adjudicatario y por orden

del Juzgado de Utuado el alguacil de ese tribunal, asistido del escribano, se constituyó en 10 de marzo de 1899 en la finca adjudicada y dió de ella posesión al banco representado en ese acto por Don Ramón Arvelo.

9°. Que el Banco Territorial y Agrícola inscribió en el registro su título de adjudicación de la finca hipotecada, en cuya inscripción se hizo constar que fué requerida de pago la Sucesión Arvelo, y no se expresaron las fechas en que fueron publicados los edictos para cada una de las subastas.

10°. Que el Banco Territorial y Agrícola por escritura de 30 de junio de 1906 vendió a don Carlos López de Tord la finca adjudicada por la cantidad de $13,000, pagaderos $1,300 de contado y el resto en diez años de plazo con sus intereses al 9% anual, cuyo título de compraventa ha sido inscrito en el registro.

11°. Que Hilario Arvelo estuvo casado dos veces, la primera con Catalina Vega, con la que contrajo matrimonio en 20 de febrero de 1866, de cuyo matrimonio nacieron Concepción y Evarista, habiendo fallecido la esposa Catalina Vega en 30 de diciembre de 1890; y en segundas nupcias con Sinforiana Vega, o sea, desde 9 de septiembre de 1891, habiendo fallecido Hilario Arvelo en 26 de diciembre de 1897 y dejado de su matrimonio con la Sinforiana tres hijas nombradas Virginia, Catalina y Juana Rosenda.

12°. Que la Corte de Distrito de Arecibo por resolución de 5 de octubre de 1914 declaró únicas y universales herederas abintestato de Hilario Arvelo Ríos a sus legítimas hijas Concepción, Evarista, Virginia, Catalina y Juana Rosenda Arvelo y Vega; y a Concepción y Evarista únicas y universales herederas abintestato de Catalina Vega; y a Concepción Arvelo única y universal heredera también abintestato de su hermana legítima Evarista.

13°. Que Catalina y Juana Rosenda Arvelo y Vega eran menores de edad, y mayores Concepción y Virginia Arvelo al entablarse la demanda que dió origen al presente juicio; que las hijas del segundo matrimonio vivían con su madre

Virginia Arvelo en el barrio de Jayuya, Utuado; y que las del primer matrimonio vivían desde la muerte de su padre, en otro barrio denominado el Cedro también de Utuado, en compañía de una tía.

La exposición del caso sólo contiene la evidencia aportada al juicio en cuanto tiene pertinencia a las cuestiones envueltas en la sentencia y apelación contra la misma.

Alega la representación de la parte demandante y apelante como motivos del recurso los siguientes:

1°. La Corte de Distrito de San Juan erró al estimar que el requerimiento de pago no era necesario hacerlo a todos los herederos de Hilario Arvelo.

2°. Dicha corte erró al no estimar que residiendo los hijos y herederos de Hilario Arvelo en el lugar del juicio, debieron ser personalmente requeridos o por lo menos intentarse su requerimiento.

3°. Dicha corte erró al no declarar nulo por falta de jurisdicción sobre la persona de los demandados, el procedimiento hipotecario, por no mediar requerimiento personal de los deudores.

4°. La corte erró al declarar que el requerimiento de Florentina Vega viuda de Arvelo, como encargada de la finca, era suficiente para dar validez al procedimiento.

5°. La corte erró al no estimar que la falta de publicación de los edictos en la Gaceta por todo el término legal, es causa de nulidad.

Los cuatro primeros motivos del recurso pueden sintetizarse en uno, a saber: que la parte sucesora o causahabiente del deudor Hilario Arvelo no fué requerida de pago en el procedimiento seguido por el Banco Territorial y Agrícola para el cobro del crédito hipotecario que le adeudaba Hilario Arvelo ya fallecido, por carecer de eficacia legal el requerimiento hecho a la viuda en la forma en que se hizo, siendo nula por tanto la adjudicación de la finca hipotecada a favor del Banco Territorial y Agrícola y responsable éste en su consecuencia de daños y perjuicios a favor de las demandantes

atendida la imposibilidad legal de ejercer la acción reivindicatoria contra el actual poseedor de la finca hipotecada.

Examinemos la anterior cuestión legal, eje cardinal del presente recurso, a la luz de los preceptos legales atinentes a ella, o sean los artículos 128 de la Ley Hipotecaria y 171 del reglamento para su ejecución.

El artículo 128, en su apartado 2º. al ordenar cómo debe hacerse el requerimiento de pago en el procedimiento sumarísimo para el cobro de crédito hipotecario, se expresa en los siguientes términos:

"Se requerirá al deudor de pago si residiere en el lugar en que radica la finca y se supiere su domicilio; bastará en otro caso que se requiera al que se halle al frente de la finca en cualquier concepto legal, a fin de que ponga en conocimiento del dueño la reclamación."

El artículo 171 del reglamento, después de haberse prevenido por el artículo 170 que el requerimiento de pago debe hacerse a los que según la certificación del registro estuvieren en poder de los bienes hipotecados, ora los conserve el deudor, ora se hayan transmitido a tercero en todo o en parte, dice así:

"Cuando todos los bienes hipotecados estén en manos de un solo poseedor, según la certificación del registro, el requerimiento de pago se entenderá con él en su domicilio si reside en el término municipal donde radique alguno de dichos bienes. Esto mismo se practicará respecto de cada cual de los poseedores de los distintos bienes cuando fueren varios. Cuando alguno de los que hayan de ser requeridos de pago no residiere en término municipal donde radique alguno de los bienes, el requerimiento se entenderá con la persona que se halle al frente de la finca en cualquier concepto legal, a fin de que lo ponga sin dilación en conocimiento del dueño. Si la finca estuviese abandonada, de modo que nadie la tenga a su cargo, el requerimiento se entenderá con la autoridad municipal administrativa del pueblo, con igual encargo de comunicarlo al deudor * * *. Cuando quiera que el requerimiento de pago no se evacue en el domicilio de aquel a quien el pago incumbe, ni tampoco se entienda con apoderado o arrendatario que tenga a su cargo la finca, se publicará además por medio de edictos, que se insertarán en la Gaceta de la isla correspon-

diente, y en tal caso el término de 30 días empezará a contarse desde la publicación en dicho periódico oficial."

Como se ve, siendo Hilario Arvelo, según el registro, el dueño de la finca hipotecada a favor del Banco Territorial y Agrícola, con él por precepto terminante de la ley debía entenderse el requerimiento de pago, si residía en el barrio de Jayuya del término municipal de Utuado en que radicaba la finca y se sabía su domicilio: pero habiendo ocurrido la muerte de Arvelo antes de iniciarse el procedimiento sumario hipotecario, ¿se estaba en el caso de requerir de pago al que se hallare al frente de la finca en cualquier concepto legal? Opinamos que no.

Es claro que muerto Arvelo no podía ser requerido de pago; pero su personalidad continuaba en sus herederos, quienes le sustituían en todos sus derechos así activos como pasivos transmisibles, y debían por tanto ser los requeridos de pago, pudiendo excusarse el requerimiento personal sólo en el caso de que no residieran en el lugar de radicación de la finca hipotecada y se ignorara su domicilio.

Los derechos a la sucesión de una persona se transmiten desde el momento de su muerte. Artículo 657 del Código Civil de 1889. La sucesión se defiere por la voluntad del hombre manifestada en testamento, y, a falta de éste, por disposición de la ley. Artículo 658.' Los herederos suceden al difunto por el sólo hecho de su muerte en todos sus derechos y obligaciones. Artículo 661. Los artículos transcritos concuerdan con los 665, 666 y 669 del Código Civil Revisado.

La sucesión como persona jurídica no existe en nuestro derecho. Cabe que una sucesión sea parte demandante o demandada; pero para ello es necesario que se particularice e individualice expresando los miembros que la componen. No es una entidad legal independiente de los herederos. Estos son los que la determinan, y son los que deben aparecer como demandantes o demandados.

Al resolver el caso de *Dapena* v. *Sucesión Dominicci,* 12

D. P. R. 66, dijo esta corte que cuando la demanda se dirige
contra una sucesión, debe expresarse el nombre de cada uno
de los herederos o darse alguna razón que justifique la omi-
sión del dicho requisito; y congruente con esa doctrina, al
resolver el caso de *Orcasitas* v. *El Registrador,* 21 D. P.
R. 553, se expresó en los términos siguientes: "Estamos
de acuerdo con el registrador en que si era necesaria la
notificación o citación a la indicada sucesión, debió haberse
hecho constar quiénes la componían, con el objeto de que
dicho registrador pudiera determinar si dicha notificación
fué hecha en forma adecuada."

En el presente caso el Banco Territorial y Agrícola inició
el procedimiento sumario hipotecario, sin alegar siquiera la
muerte de Hilario Arvelo, ni quiénes eran sus herederos
y su deber era expresar cuáles eran esos herederos para que el
requerimiento se llevara a efecto en la persona de los mismos
como causahabientes del deudor, si residían en el lugar de la
finca hipotecada, o de no ser así, se entendiera con la persona
que en cualquier concepto legal se encontrara al frente de ella.

La petición del Banco Territorial y Agrícola de que fuera
requerida de pago la Sucesión de Hilario Arvelo dió lugar
a que el juez que conocía del procedimiento ordenara el re-
querimiento solicitado y no el de los miembros que la com-
ponían.

No cabe sostener que a falta del requerimiento de los
miembros de la Sucesión de Hilario Arvelo fué legal el hecho
a su viuda por hallarse al frente de la finca hipotecada, pues
ese requerimiento sólo hubiera sido legal si los herederos del
deudor no hubieran residido en el lugar o término municipal
donde radicaba la finca hipotecada y el récord demuestra
que tanto las hijas del primer matrimonio de Arvelo como las
del segundo vivían en el término municipal de Utuado en
cuyo barrio nombrado Jayuya radicaba la finca. La viuda
no era apoderada de las hijas mayores de edad del primer
matrimonio de Arvelo, y aunque podía tener la representa-
ción legal de sus propias hijas menores de edad como no fué

requerida de pago en ese concepto, tampoco el requerimiento en cuanto a ellas podía ser eficaz en derecho.

"Una persona puede en diferentes ocasiones o simultáneamente, ocupar diferentes relaciones, actuar en distintos conceptos y representar intereses separados y tal vez antagónicos. Es regla, así del derecho civil, como del derecho común, que una parte actuando en determinado carácter, no puede ser beneficiada o perjudicada por una sentencia dictada a favor o en contra de ella, cuando actuaba en otro concepto. De aquí se sigue, que si uno tiene derechos en una cosa en su propio derecho, puede hacerlos valer aunque se le hiciera parte en una acción en una capacidad representativa; y de igual modo si fuere parte en tal acción, en su propio derecho, puede, sin embargo, hacer valer los derechos de otra persona que represente." *Freeman on Void Judicial Sales,* página 14, párrafo 3º.

Además, como el requerimiento de pago se entendió con la viuda de Arvelo que estaba al frente de la finca y no con el deudor personalmente ni con apoderado o arrendatario, dicho requerimiento debió publicarse por medio de edictos, según previene el artículo 171 del reglamento para la ejecución de la Ley Hipotecaria y también por falta de dicha formalidad la diligencia es ineficaz en derecho.

Sostiene la parte apelante que "con arreglo a los artículos 128, párrafo 2º., de la Ley Hipotecaria, y 170, párrafo 1º., de su Reglamento, sólo podía requerirse de pago a Hilario Arvelo que figuraba como dueño en el registro, y careciendo éste de domicilio puesto que había fallecido sólo podía requerirse de pago a la persona que estaba al frente de la finca, que fué la requerida."

Como demuestran esos mismos textos legales el requerimiento que se haga al encargado de la finca es meramente sustituto pues a él sólo debe acudirse cuando no pueda efectuarse en la persona del obligado al pago, en su domicilio, por ignorarse éste o cuando pueda excusarse por tener el deudor su domicilio fuera del término municipal en que radica la

finca.   En el presente caso ni existía la imposibilidad de ve-
rificarse el requerimiento en la persona del deudor, a quien
por fallecimiento de éste substituían sus herederos, ni éstos
residían fuera del término municipal de la finca hipotecada.

Los preceptos legales que se dejan citados, al autorizar
el requerimiento de pago en la persona que se halle al frente
de la finca en cualquier concepto legal, no se refieren al caso
en que el deudor hubiere fallecido sino al caso de que éste
no residiere en el término municipal, y además, en caso de
muerte del deudor la persona encargada de la finca no podría
dar conocimiento del requerimiento al dueño de ella que ha
dejado de serlo por su muerte pasando el dominio a sus he-
rederos.

El pago incumbía por fallecimiento de Hilario Arvelo a
sus herederos quienes bajo concepto alguno fueron requeridos
de pago ni personalmente ni por medio de apoderado o arren-
datario y de ahí que habiéndose practicado el requerimiento
en la persona que estaba encargada de la finca debió publi-
carse ese requerimiento por medio de edictos según dejamos
indicado.   Pero es que aunque tal publicación se hubiera he-
cho el requerimiento no hubiera perjudicado a los herederos
de Arvelo por falta de las condiciones necesarias para que
pudiera prescindirse del requerimiento personal.

Examinados en conjunto los cuatro primeros motivos del
recurso pasemos a considerar el quinto error, que se funda en
la falta de publicación de los edictos en la Gaceta por todo
el término legal.

Ordena el artículo 128 de la Ley Hipotecaria en su tercer
apartado que a los 30 días de verificado el requerimiento se
publicarán los edictos en la Gaceta de la Isla con expresión
del estado de los títulos de propiedad, celebrándose la subasta
a los 20 días de la publicación; y el artículo 172 del Regla-
mento previene que expirado aquel plazo ordenará el juez que
se pongan en pública subasta los bienes hipotecados por tér-
mino de veinte días, fijándose edictos en los sitios públicos
de costumbre del lugar en que se siga el procedimiento y del

en que los bienes radiquen e insertándose en la Gaceta de la Isla con expresión de los títulos de propiedad.

Las formalidades señaladas para el anuncio de la primera subasta deben llenarse también en las subastas posteriores que se celebren.

En el presente caso la primera subasta de la finca hipotecada se señaló para el día 25 de abril de 1898 y los edictos anunciándola fueron publicados en los números de la Gaceta Oficial correspondiente a los días 5, 6 y 7 del mismo abril; de modo que entre el anuncio del día 5 de abril y la celebración de la subasta que quedó desierta, medió el término legal de veinte días prevenido por la ley.

Para la computación de los veinte días se cuenta la primera publicación del edicto, pues ni la Ley Hipotecaria ni su Reglamento ordenan ulteriores publicaciones y la subasta ha de celebrarse a los veinte días de la publicación.

Lo mismo podemos decir respecto de la segunda subasta, pues ésta fué señalada para tener efecto el día 20 de junio de 1898 y la publicación de edictos en la Gaceta se hizo en los días 31 de mayo y 1°. y 2 de junio siguiente, habiendo mediado entre la primera publicación y la celebración de la subasta el término de veinte días señalado por la ley.

No sucede lo propio en cuanto a la tercera subasta, pues ésta se señaló para el día 4 de agosto de 1898 y los edictos se publicaron en los días 17, 19 y 21 de julio anterior, habiendo por tanto mediado entre la primera publicación y la subasta solamente 18 días, o sea, un término inferior al marcado por la ley.

Al resolver en julio 20, 1915, el caso de *Henna et al.,* v. *Sauri y Subirá,* 22 D. P. R. 836, dijimos que "el defecto de publicar los edictos por menos tiempo del requerido por la ley no anula necesariamente la subasta, toda vez que puede ser renunciado por el deudor, y para que un acreedor posterior pueda obtener la declaración de nulidad por ese motivo, es un principio general de derecho que debe demostrar que ha sido necesariamente perjudicado." La parte apelante alega

que no existe semejanza entre el caso anterior y el presente, pues no es la misma la posición de un segundo acreedor hipotecario a que se refería el caso citado, que la del deudor principal ejecutado de quien son los demandantes causahabientes en la presente acción.

Opinamos que la parte apelante tiene razón.

En el tomo 17 de Cyc., página 1245, leemos:

"En una mayoría de jurisdicciones los estatutos exigen que el aviso de la venta sea hecho mediante publicación en los periódicos por un período de tiempo determinado, o por un número de veces que ha de designarse, y la regla general es que dichos preceptos estatutorios deben ser observados estrictamente, habiéndose sostenido que hasta las más leves desviaciones de los mismos anulan el aviso o por lo menos hacen que la venta pueda ser anulada."

Se citan en apoyo de la anterior doctrina las autoridades siguientes: 57 Cal. 333; 33 Cal. 45; 33 La. Ann. 271; 9 La. 531; 19 La. 300.

La Corte Suprema de los Estados Unidos en el caso de *Early* v. *Doe,* 57 U. S., 617, 618, establece que aunque hay ciertamente diferencia entre el rigorismo que se exige en una venta para el cobro de contribuciones y el requerido en una venta en ejecución para el cumplimiento de una sentencia, en ambas se aplica la misma regla en cuanto al término completo de publicación que la ley requiere se de para verificar la venta; que en un procedimiento *ex parte* bajo una ley especial se requiere un estricto cumplimiento del estatuto y que una persona no puede ser privada de su propiedad contra su consentimiento mientras no se haya cumplido cada uno de los requisitos sustanciales de la ley.

El procedimiento seguido por el Banco Territorial y Agrícola de Puerto Rico contra la Sucesión de Hilario Arvelo era un procedimiento sumario, especial y *ex parte,* y debieron observarse estrictamente las prescripciones de la Ley Hipotecaria y su reglamento. No habiéndose hecho la publicación de edictos para la tercera subasta por el término legal

de 20 días, la adjudicación hecha al banco en pago de la deuda estaba viciada de nulidad.

Afirma la parte apelada que según el artículo 172 del Reglamento Hipotecario, tal como aparece en la edición Morell de la Ley Hipotecaria y su Reglamento autorizada por Real Orden de 26 de noviembre de 1893 y en la Gaceta Oficial de esta Isla correspondiente al día 28 de Octubre de 1893, no es necesaria la inserción de edictos en la Gaceta Oficial, pues dicho artículo otorga la facultad alternativa de fijar los edictos en los sitios públicos de costumbre del lugar en que se siga el procedimiento y del en que los bienes radiquen *o* de insertarlos en la Gaceta Oficial, bastando por tanto que se haga una u otra cosa.

La edición oficial de la Ley Hipotecaria para las Provincias de Ultramar que tenemos a la vista, con sello del Ministerio de Ultramar de España, año 1893, autorizada por Real Orden de 14 de julio de 1893, no concede tal facultad alternativa pues la parte del artículo 172 del Reglamento a que nos referimos no emplea la conjunción disyuntiva ''o'' sino la copulativa ''y''. La misma Ley Hipotecaria en su artículo 128, párrafo 3°., ordena por modo expreso que a los treinta días de verificado el requerimiento de pago se publicarán los edictos en la Gaceta de la Isla correspondiente, y aunque el último párrafo de ese artículo dispone que en el Reglamento para la ejecución de la Ley Hipotecaria se determinarán los demás pormenores a que habrá de ajustarse el procedimiento sumario, no es posible admitir que dicho Reglamento en el párrafo 1°. del artículo 172 haya querido contrariar el precepto general de la Ley dejando a la voluntad del acreedor la publicación de los edictos en los sitios públicos que expresa o en la Gaceta de la Isla.

Ciertamente que según alega la parte apelada el artículo 128 de la Ley Hipotecaria en su párrafo 3°. se refiere a la publicación de edictos en la Gaceta para la primera subasta, y que el artículo 172 del Reglamento dice en su último párrafo con relación a la segunda subasta que se verificará en

la misma forma que la primera, sin que estatuya nada sobre el particular al hablar de. las subastas posteriores a la segunda.   Tal omisión no favorece la contención de ser innecesaria la publicación de edictos para la tercera subasta, pues no puede haber subasta de una cosa sin que se publique su venta, y la práctica de los tribunales ha sido constante en el sentido de que tanto para la primera y segunda subastas, como para las posteriores, han de llenarse las mismas formalidades legales.   Así lo entendió el mismo banco acreedor en el procedimiento hipotecario de que se trata.

Ha insistido la parte apelada ante esta Corte Suprema en que la demanda no aduce hechos suficientes para determinar una causa de acción, y en que la acción ejercitada ha prescrito de acuerdo con los artículos 1093, 1902 y 1968 del Código Civil Español por haber transcurrido el término de un año que exige el párrafo 2°. del artículo 1968 para demandar el cumplimiento de las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1902.

La primera excepción es improcedente pues el demandante no estaba en el deber de solicitar previamente la declaratoria de las nulidades de que adolece el procedimiento sumario hipotecario para que pudiera ser viable la indemnización que pretende, como tampoco estaba obligado a solicitar dicha nulidad en el caso de que hubiera podido ejercitar contra el banco la acción reivindicatoria con relación a la finca subastada en el procedimiento hipotecario.   *Sucesión Suro* v. *Prado,* 21 D. P. R. 241; *Oliver* v. *Oliver,* 23 D. P. R. 181; y *Longpré* v. *Díaz,* 59 U. S. (Law. ed.) 1080, 237 U. S. 512.

En la demanda se consignan los hechos determinantes de la nulidad del procedimiento hipotecario seguido por el banco contra Hilario Arvelo, y la imposibilidad legal en que se encuentra la parte demandante de ejercitar acción alguna contra el actual poseedor de la finca subastada, don Carlos López de Tord, quien adquirió del banco, de buena fe y sin conocimiento de aquellas nulidades, y esos hechos son bastantes para la acción que se ejercita.

Por lo que atañe a la excepción de prescripción fundada en el número 2°. del artículo 1968 del Código Civil Español, también es de desestimarse por las razones que ya adujimos al tratar igual cuestión en el caso de *Carmona et al., v. Cuesta,* 20 D. P. R. 229.

La doctrina establecida en dicho caso fué ratificada en otro caso posterior de *Carmona v. Cuesta,* 23 D. P. R. 685.

El hecho de que la exposición del caso sólo contiene la evidencia aportada al juicio sobre las cuestiones envueltas en la sentencia y apelación contra la misma sin incluir la que se hubiere introducido sobre daños y perjuicios, no es razón legal para sostener la sentencia apelada, existiendo como existen las causas que se alegan como originarias de esos daños y perjuicios. *Exchange National Bank v. Third National Bank,* 112 U. S. 276; *Texas and Pac. Ry. Co. v. Cox,* 145 U. S. 593.

A la corte inferior toca determinar y fijar los daños y perjuicios cuya indemnización se pide.

Es de revocarse la sentencia apelada, devolviéndose el caso a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la sentencia apelada y devuelto el caso para ulteriores procedimientos.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.