470

Francisca Sosa Millán, demandante y apelada, *v.* Juan I.
Sosa Escobar y Celestina Sosa Vizcarrondo, demandados
y apelante la última. Carmen María Sosa Millán, deman-
dante y apelada, *v.* Juan I. Sosa Escobar y Celestina
Sosa Vizcarrondo, demandados y apelante la última.

Núms. 8161 y 8162.—*Sometidos:* Marzo 25, 1941. *Resueltos:* Abril 17, 1941.

*Heriberto Torres Solá,* abogado de la apelante; *Ricardo H. Blondet,*
abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tri-
bunal.

Manuel Sosa Olivas falleció en Río Grande el 5 de sep-
tiembre de 1921, bajo testamento abierto que otorgó el 4 del

mes anterior, ante el Notario don Carlos García de la Noceda. Instituyó por sus únicos y universales herederos a sus hijos naturales reconocidos Juan I. Sosa Escobar y Celestina Sosa Vizcarrondo, y nombró albaceas a su citado hijo y al Dr. José Celso Barbosa, respectivamente, por el orden en que han sido nombrados, "para que en caso de ausencia, incapacidad o muerte del primero le suceda el segundo . . ."

Hizo un legado de parte alícuota a Carmen Escobar, madre de su indicado hijo, y entre otros legados, hizo uno en los siguientes términos:

"Lego a favor de dichos menores Víctor Manuel, Manuel Isidro, Carmen María y Francisca Sosa Millán, hijos de Mariana Millán, la suma de $10,000 a cada uno, de cuya cantidad, una vez terminada la liquidación de los bienes del testador, percibirá cada menor favorecido el interés del 6 por ciento anual, mientras sean menores de edad, y este legado es con la condición que al fallecer cualquiera o cualesquiera de ellos, pasará o pasarán éste o estos legados a favor de los que de ellos queden vivos, salvo que el o los favorecidos tuviesen sucesión, esto es, hijos; y si todos fallecieren sin dejar sucesión, entonces estos legados pasarán a favor de don Juan I. Sosa y doña Celestina Sosa y Vizcarrondo, por partes iguales. También es condición indispensable que en cuanto empiecen a disfrutar estos agraciados de este último legado *deben ser administradores de los mismos, indistintamente, don Juan I. Sosa y Escobar y doña Carmen Escobar, bajo cuya protección estarán dichos menores,* pues de lo contrario y en el caso de que la madre de los referidos menores los retirase del lado de dichos propietarios (*sic*) y los llevare a vivir con ella, entonces no *percibirán los mencionados menores* ni directa ni indirectamente, *ninguna renta o intereses correspondientes a sus respectivos legados,* quedando nula y sin ningún valor ni efecto legal esta disposición *en cuanto a los intereses o rentas de los mencionados legados.*"

El 3 de noviembre de 1921 don Juan I. Sosa Escobar, doña Celestina Sosa Vizcarrondo y doña Carmen Escobar otorgaron ante el mismo Notario Sr. García de la Noceda una escritura de partición de bienes en la cual se hace una relación de los legados incluyendo el de los menores anteriormente transcrito, todos los cuales suman $57,000, y se

adjudica en dicha escritura a Juan I. Sosa Escobar la cantidad de $81,565.68, con la cual pagará el montante de los legados más las deudas del caudal, ascendentes a $24,565.68.

. Así las cosas, el 25 de enero de 1938 Francisca y Carmen María Sosa Millán radicaron separadamente las demandas de estos pleitos contra los herederos de Manuel Sosa Olivas, es decir, Juan I. Sosa. Escobar y Celestina Sosa Vizcarrondo, alegando que han llegado a su mayoridad y no les han entregado a cada una de ellas la cantidad de $10,000, importe del legado antes mencionado, ni los intereses devengados por esa cantidad al tipo de 6 por ciento anual desde el 3 de noviembre de 1921, ni se han invertido esos intereses en beneficio de ellas, resultando estériles todas sus gestiones para obtener el pago de las sumas reclamadas. Terminan las demandas solicitando sentencia en cada pleito condenando a los demandados a pagar mancomunada y solidariamente a cada demandante dichas sumas, más las costas y desembolsos.

La demandada Celestina Sosa Vizcarrondo se personó en autos. Interpuso excepción previa alegando que la demanda, en cuanto a ella, no exponía hechos constitutivos de causa de acción. Desestimada la excepción previa, radicó una extensa contestación oponiéndose a las pretensiones de las demandantes.

El otro demandado, padre de las demandantes, no compareció, pero en el acto del juicio las demandantes presentaron evidencia, con la oposición de la demandada, una titulada estipulación en cada pleito que por ser breve la transcribiremos a continuación:

"Moción sobre estipulación y sentencia.—

"Comparecen las partes por sus respectivos abogados y respetuosamente alegan: PRIMERO: Ha convenido el demandado Juan I. Sosa con la demandante Francisca Sosa Millán en abonarle en pago parcial de la suma de diez mil dólares que le fué legada por su difunto abuelo y que es objeto de la reclamación en este caso, la suma de quinientos treinta y seis dólares, en el valor de una finca situada en el barrio de Martín González, de Carolina, Puerto Rico. —SEGUNDO: Que este abono parcial se hace a cuenta de mayor can-

tidad, reconociendo el compareciente Juan I. Sosa no haber satisfecho tampoco las mensualidades correspondientes a la demandante durante su minoridad, así como también el no·haberla requerido a ella ni a sus otros tres hermanos, también legatarios de su difunto abuelo, para que vinieran a vivir en su compañía, ya que debido a haberse casado, se hacía incompatible la vida de la familia de la demandante con la familia legítima del demandado compareciente.—TERCERO: Que consiente don Juan I. Sosa en que se dicte sentencia en su contra por la reclamación total de la demanda con abono parcial de la cantidad satisfecha, ya que la demandante admite por su parte el haber practicado búsquedas de bienes del demandado Juan I. Sosa y el no haber podido localizar otros·bienes que los que él entrega en pago parcial.—POR TODO LO CUAL, suplican de ese tribunal apruebe este convenio con cualquier pronunciamiento pertinente al efecto.—San Juan, P. R., a_____de abril de 1938.—Respetuosamente, (fdo.) Adrián Agosto, abogado del demandado; (fdo.) R. H. Blondet, abogado de la demandante.—(fdo.) Juan I. Sosa, demandado (Conforme)—(fdo.) Francisca Sosa, demandante (Conforme).''

Idéntica estipulación se presentó en el caso seguido por Carmen María Sosa Millán.·

. ·Oída la prueba de una y otra parte, la corte inferior, el 8 de agosto de 1939, dictó sentencia en cada caso condenando a los demandados a pagar a cada una de las demandantes ''mancomunada y solidariamente la cantidad de $10,000, importe de su legado, con más los intereses devengados por esa cantidad al 6 por ciento anual desde el 3 de noviembre de 1931 (sic) y hasta su total pago, pero de dicha suma deberá descontarse la cantidad de $536 abonados al legado por el codemandado Don Juan I. Sosa Escobar, cuya suma, según el precepto legal, deberá imputarse primero a los frutos del legado y en la fecha en que se hizo el pago, o sea en 30 de abril de 1938; con más las costas y desembolsos de este procedimiento, incluyendo en las mismas la cantidad de cien ($100) dólares como honorarios del abogado de la parte actora.''

En la opinión que sirvió de base a las sentencias apeladas, el juez inferior admite que Juan I. Sosa recibió

la cantidad suficiente para el pago de estos legados, pero sostiene que la adjudicación que con ese objeto le fué hecha, es ineficaz y no obliga a las demandantes porque en la escritura de partición no consta que dicho Sr. Sosa compareciera como padre con patria potestad sobre las demandantes ni como representante de ellas, ni en ninguna otra condición que lo conecte con las demandantes. Sobre esta cuestión dice el juez inferior:

"Lo primero que tenemos que preguntarnos es si ha sido o no pagado el legado tanto en lo principal como en lo accesorio. Del análisis de la prueba que antes hacemos y que declaramos como hechos probados, no aparece por parte alguna que al hacerse la adjudicación de los bienes a Don Juan I. para el pago de los legados éste compareciera en otra capacidad que no fuese la suya como heredero para admitir una cantidad a fin de satisfacer las deudas, los legados y otras obligaciones de la herencia; pero no hay nada que pueda indicar que en dicha escritura él compareciera como padre de las demandantes ni como representante de ellas, ni en ninguna otra condición que lo conecte con las demandantes. No puede decirse en estas condiciones que haya habido una adjudicación a favor de las demandantes. La demandada compareciente insiste en su alegato en que el mero hecho de la comparecencia de Don Juan I. es indicación clara de que él tenía la representación de ellas, ya que no se puede tener distinta personalidad, pero la teoría en esta jurisdicción parece serle contraria. Véase *Arvelo et al.* v. *Banco Territorial*, etc., 25 D.P.R. 728.

"No hay indicación alguna de que Don Juan I. recibiera cantidad alguna para el pago del legado de las demandantes, ya que a él se le adjudicaron englobadamente diversos bienes y de distintos valores para el pago de múltiples obligaciones, de índole variada, de la herencia. La forma de esta adjudicación demuestra ser más que otra cosa una de las operaciones corrientes de esta naturaleza mediante las cuales los interesados separan bienes del haber hereditario y los entregan a uno de ellos para pago de las deudas, legados y otras bajas, constituyéndolo en mandatario de la comunidad sucesora, y a la cual responde de la inversión de dichas cantidades, pero esto no afecta en forma alguna a los legatarios ni a los acreedores, porque mientras no se les paguen sus legados o sus acreencias no se extingue su obligación. Tenemos que llegar a la conclusión de que

la mera adjudicación de bienes al demandado Don Juan I. no pudo equivaler al pago de los legados de las demandantes.

"Pero aun cuando fuera ello así, si éste no ha cumplido su en-cargo o mandato, será responsable a los mandantes, pero en forma alguna han quedado relevados los herederos de las obligaciones im-puéstales por el testador y mucho más si los legatarios y acreedores no intervinieron en las operaciones particionales. De aquí que no pudiendo don Juan I. comparecer en otra capacidad en la escritura de partición que como heredero, se hacía necesaria la habilitación de un defensor *ad litem* para representar a las demandantes y someter después dichas operaciones particionales a la aprobación del tribunal de distrito correspondiente por ser entonces dichas demandantes menores de edad."

De la opinión de la corte inferior se desprende que se ha confundido el concepto jurídico del legatario con el de here-dero. El legatario es un mero acreedor de la herencia y como tal no es necesario que comparezca en la escritura de par-tición de bienes. Examinemos lo prescrito en el artículo 825 del Código Civil (ed. 1930), idéntico al 903 del español. Dice así:

"Art. 825. Si no hubiere en la herencia dinero bastante para el pago de funerales y legados, y los herederos no lo aprontasen de lo suyo, promoverán los albaceas la venta de los bienes muebles; y no alcanzando éstos, la de los inmuebles, *con intervención de los herederos.*

"*Si estuviere interesado en la herencia algún menor,* ausente, corporación o establecimiento público, la venta de los bienes se hará con las formalidades prevenidas por las leyes para tales casos."

Interpretando Manresa la frase *"si estuviere interesado en la herencia algún menor,"* dice:

"Herencia es lo que corresponde a los herederos: el interesado en la herencia es el mismo heredero a que se refiere el párrafo pri-mero del artículo. En efecto, si el legatario, aun de parte alícuota, es mayor de edad, la ley no exige su intervención; *sólo pide la inter-vención de los herederos.* ¿Se concibe que siendo menor esa ley atienda con tanta solicitud a su interés, y al cumplir los 23 años, le abandone y no le conceda intervención? No; ambos párrafos están enlazados y envuelven la misma idea: que no se prescinda nunca

de los herederos, contando con ellos si son capaces, rodeando el acto de la enajenación de los bienes de todas las formalidades legales propias del caso, cuando se haya limitado su capacidad de obrar. *Los legatarios son verdaderos acreedores,* y aun siendo de parte alícuota, han de reclamar su legado a los acreedores (entiéndase albaceas) y siempre pueden ejercitar la acción rescisoria si se les ocasiona irreparable perjuicio, aparte de las demás facultades que les conceden las leyes." 6 Manresa, Código Civil Español, 758. (Bastardillas y paréntesis nuestros.)

Determinando las facultades de los albaceas, prescribe el artículo 824 del Código Civil (ed. 1930):

"No habiendo el testador determinado especialmente las facultades de los albaceas, tendrán las siguientes:
"1.
"2. Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.
"3.
"4. "

El citado comentarista, comentando el artículo 902 del Código Civil español, igual al 824 que en lo pertinente hemos transcrito, dice:

"No expresando nada en contrario el testador, los legatarios de sumas en metálico deben, en caso necesario, reclamar el pago de sus legados a los albaceas, pues como hemos dicho, se trata de facultades que constituyen al mismo tiempo verdaderos deberes." Obra y tomo citados, pág. 755.

Si los bienes muebles pueden venderse por el albacea sin el concurso de los herederos, y los inmuebles con el concurso de éstos, sin intervención del legatario en uno y otro caso, con ciertas excepciones que no concurren en este caso—entre ellas cuando se trata de vender un bien que ha sido legado a una persona—es obvio que los legatarios tampoco tienen derecho a intervenir en la partición de los bienes hereditarios, ya que como reiteradamente ha dicho este tribunal, [3] la partición no es otra cosa que una enajenación entre los herederos de la parte indeterminada que tienen en la herencia, por la parte determinada y específica que reciben a cambio

de aquélla. *Del Rosario* v. *Rucabado,* 23 D.P.R. 473, 478; *Latorre* v. *Registrador,* 24 D.P.R. 200; *Ex parte Sotomayor,* 24 D.P.R. 185; *Aponte* v. *Registrador,* 30 D.P.R. 785.

Pero es más, los artículos 1011 y 1013 del Código Civil, iguales a los 1058 y 1060 del español, regulan la materia en la siguiente forma:

"Art. 1011. Cuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si *los herederos* fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente."

"Art. 1013. Cuando los menores de edad estén sometidos a la patria potestad y representados en la partición por el padre y en su caso por la madre, no será necesaria la intervención ni la aprobación judicial."

Por último, el artículo 71A de la Ley de Procedimientos Legales Especiales, art. 605 del Código de Enjuiciamiento Civil, que alegan las apeladas haber sido infringido, prescribe:

"Art. 71A. Siempre que se verificase una partición de herencia, en la cual hubiere interesados menores de edad, o incapaces, si se adjudicaren bienes de la herencia en pago de deudas, a herederos, o extraños, deberá someterse a la aprobación de la corte de distrito competente, y si ésta, con audiencia del fiscal, quedare satisfecha de la certeza de la deuda y de que la adjudicación en pago de la misma es razonable y justa, podrá aprobar dicha adjudicación en pago, sin necesidad de la subasta pública."

Es evidente que los menores de edad a que se refieren tanto el artículo 1013 del Código Civil como el 71A de la Ley de Procedimientos Especiales son los herederos menores de edad y no los legatarios, pues si estos últimos, siendo mayores de edad no tienen derecho a intervenir en la partición (art. 1011 del Código Civil), es obvio que tampoco pueden intervenir por el hecho de que sean menores de edad.

La incomparecencia de las menores demandantes en la escritura de partición y el hecho de no haberse cumplido con las formalidades prescritas por el artículo 71A, por no.

ser aplicable, no afectan la validez de dicho documento. A mayor abundamiento, véase el caso de *Sosa* v. *Registrador,* 34 D.P.R. 765, donde por este tribunal se ordenó la inscripción de la escritura de partición que nos ocupa.

■■ Réstanos ahora resolver si el pago del legado a Juan I. Sosa obliga a las legatarias demandantes.

No siendo necesario acreditar el recibo del legado mediante el otorgamiento de una escritura pública, no precisaba que en la de partición se consignase expresamente que Juan I. Sosa comparecía en el carácter dual de heredero y de administrador del legado. Bastaba que el pago se hiciese a la persona que el testador designó para recibirlo y a esa persona se hizo. Si Sosa, faltando a la obligación legal y moral que tenía para con sus hijos y a la confianza en él depositada por su padre, dilapidó el fondo que para su administración le fué entregado, cúlpese a él y hasta cierto punto al testador por su imprevisión al encomendarle una misión para la cual no estaba preparado; pero no se pretenda imponer esa responsabilidad a la demandada, que religiosamente pagó a quien según el testamento estaba obligada a pagar.

El caso de *Arvelo* v. *Banco Territorial y Agrícola,* 25 D.P.R. 728, no es aplicable. Allí se decretó la nulidad de un procedimiento ejecutivo hipotecario por no haberse requerido de pago a los demandados y se dijo que el requerimiento diligenciado exclusivamente en la madre de los demandados, algunos de los cuales eran menores de edad, no confería jurisdicción sobre los hijos. Envolvía aquel caso una cuestión de jurisdicción que no existe en el que nos ocupa.

No es necesario considerar otras cuestiones suscitadas en este recurso.

*Por lo expuesto, procede revocar las sentencias apeladas en cuanto se refieren a la demandada Celestina Sosa Vizcarrondo, única que ha apelado, y dictar en cada caso la que debió haber dictado la corte sentenciadora, es decir declarar sin lugar la demanda en cuanto a dicha demandada, con costas a las demandantes.*